[Crim. No. 3514. Second Dist., Div. One. Dec. 31, 1941.]

THE PEOPLE, Respondent, v. ARNOLD BUMBAUGH, Appellant.

Gerald A. Coxe for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

WHITE, J.—The defendant was charged in count 1 of the information herein with the crime of assault by means of force

likely to produce great bodily injury; in count 2 with the offense of forcible rape; while count 3 alleged a violation of section 288a of the Penal Code. Upon the trial thereof the jury found him guilty as charged in each of said counts. From the judgments of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

Stating the facts in the light most favorable to the prosecution, as we must do following a verdict of guilty, such facts, as to count 1, may be thus summarized: On or about February 26, 1941, the prosecutrix owned and operated a cafe on Garvey Road between Monterey Park and Pomona in Los Angeles County. Defendant had previously been in the cafe. On the aforesaid evening he spent several hours therein drinking beer and dancing. In response to defendant's invitation, the prosecutrix danced with him during the evening. About 1:30 o'clock on the following morning the prosecutrix left the cafe and got into the automobile of one of her employees who had brought her to work and with whom she intended to go home when the cafe closed. This automobile was parked near the side door of the cafe. The prosecutrix lay down on the back seat of the car and went to sleep. The car was a two-door sedan. The light over the side door of the cafe was about fifteen feet distant. The testimony indicates that the defendant was seen to leave the cafe by the side door about ten minutes before two o'clock. Shortly thereafter the prosecutrix was awakened by defendant's choking her and pulling her out of the car. She screamed, but the defendant put his hand over her mouth, choked her with the other hand, and dragged her about thirty feet through the mud of the parking lot toward the darkness away from the cafe. Defendant threw the prosecutrix down on her back in the mud, where he lay upon and continued to choke her as she struggled to free herself from his grasp. According to her testimony, she was unable to scream because defendant continued to hold one hand over her mouth. During the struggle her coat and stockings were torn and her clothing, face and hair were covered with mud. Defendant loosened his hold momentarily and the prosecutrix screamed again, at which time defendant got up and ran around the corner of the building. The prosecutrix made her way to the kitchen door of the cafe, in a dazed and hysterial condition. According to her employee, who was near the door about to close the cafe for the night, the prosecutrix had welts and other scratches on her neck, bruises on her legs, and her forehead was skinned. She related what had hap-

pened, and with her employee went to a private police patrol agency, from which place they called the Temple City sheriff's substation. The evidence further indicates that within a week or so after this occurrence defendant went to Palm Springs, where he obtained work under the assumed name of George Arnold, Jr.

The factual background of counts 2 and 3 may be epitomized as follows: The alleged victim named in these counts was a widowed mother of two children aged 12 and 10 years. She was employed as a cook and waitress in a cafe operated by her mother on Garvey Road. She resided with her children over some garages in the rear of a lot near the cafe. She was acquainted with the defendant, whom she knew as one of the residents of the neighborhood, and he had been in the restaurant two or three times prior to the alleged assault. On the night of September 18, 1939, defendant entered the restaurant between ten and eleven o'clock and remained there until about twelve, when the complainant closed the cafe for the night. With the defendant she left the cafe, the defendant stating that he would walk with her, as it was dark. As they approached the home of the complaining witness, defendant walked back along the driveway with her to the steps leading up to her apartment. The testimony indicates that it was very dark because trees overshadowed the entire driveway. The complaining witness testified that after she had bade the defendant good night and had taken two or three steps up the stairs, he tripped her, pulled her backward, and she fell to the ground on her back. Defendant immediately got on top of her and when she tried to scream put his hand over her nose and mouth and admonished her not to make an outcry. She testified that he pinned her down, overcame her resistance, and raped her. During the struggle, she received several scratches and bruises, and, the prosecutrix testified, during the course of the assault the defendant outraged her in violation of section 288a of the Penal Code. After the defendant finally released her she went upstairs to her apartment, locked the door and watched until she saw the defendant pass the street light on the corner. She then went to her mother's home and made complaint concerning appellant's conduct. She waited there until the sheriff's deputies arrived. During the morning she was attended by a physician and was confined to her bed for two days from shock and soreness of her body. The physician found skin burns about the neck and back, over the shoulder blades. There were also well-

defined imprints in the shape of a bite of both upper and lower teeth at the base of the neck. There were scratches and bruises over the sacrum, buttocks and both sides of the hips. The outer sides of both legs of the prosecutrix were also scratched and bruised from the hips to the knees. The mouth of the vagina had teeth marks on both sides of it.

As to count 1, the defendant testified that he was in the cafe on the evening in question; that he was drinking with the prosecutrix and that she had agreed to meet him outside in an automobile, promising to "show him a good time." He further testified that she was to give him a "high sign" when she left the cafe, which promise he testified she fulfilled, whereupon, shortly thereafter, he went outside and found the prosecutrix asleep in the rear seat of the automobile. He testified that he then proceeded to awaken her and attempted to induce her to come out of the car, and in his attempt to assist her she either slipped or stumbled and fell on her hands and knees on the ground outside the car. He testified that the prosecutrix thereupon directed toward him a violent stream of profane language, whereupon a struggle ensued in which, according to defendant, he was attempting to get the complainant on her feet, but she resisted and rejected his proffered assistance, and remained on the ground on her hands and knees. According to his testimony, he thereupon came to the conclusion that the prosecutrix had no intention of fulfilling her promise to him, whereupon he abandoned her entirely and went on his way. He testified that he remained in the neighborhood, residing at the home of his parents, for about a week after the alleged assault, after which for a period of several weeks he worked on a chicken ranch near Yucaipa, in Riverside County.

With reference to counts 2 and 3, the defendant admitted being in the cafe on the night charged in the information, and testified that during his sojourn there he was drinking beer and talking to the complainant until about midnight, when she took the day's receipts out of the cash register, placed them in her purse, and requested him to escort her home. According to his testimony, he and the complainant engaged in an act of sexual intercourse on the grass at the foot of the stairs leading up to her apartment. He testified that the act was accomplished with her consent and without any resistance whatsoever upon her part; that after the act was accomplished he assisted her to her feet; that she went upstairs and

he retired to his home in the neighborhood. He emphatically denied the claimed violation of section 288a of the Penal Code.

As to count 1, appellant contends that the verdict of guilty thereunder is contrary to and unsupported by the evidence, as well as contrary to law. In support of this claim it is argued that while the evidence clearly establishes the fact that an altercation took place between prosecutrix and the appellant, the circumstances thereof as revealed by the testimony do not warrant a conviction of any offense other than simple assault. The genesis of this argument is predicated upon the claim that the evidence shows that the complainant and defendant were on friendly terms throughout the time they were in the cafe, and that no weapon of any kind was used; that the assault consisted merely of a scuffle between the participants therein, during the course of which appellant used only his hands or fists. The case of *People* v. *Mullen*, 45 Cal. App. (2d) 297 [114 Pac. 11], relied upon by appellant, is easily distinguishable from the case at bar. In the first place, the charge against the defendant in the cited case was assault with intent to commit rape, and the court simply held that the evidence was insufficient to disclose or establish the intent required to substantiate the charge there in question. The statement contained in the decision that under the circumstances therein presented the defendant was ''guilty of nothing more than simple battery,'' was merely *dicta* and not necessary to the decision.

To constitute the crime of assault within the meaning of section 245 of the Penal Code, under which appellant in the instant case was charged, it is not required that an intent to severely injure the victim by the use of force be proved. (*People* v. *Lim Dum Dong*, 26 Cal. App. (2d) 135, 140 [78 Pac. (2d) 1026].) Nor is it required that the injuries inflicted be of a serious nature. The word ''violent'' as used in section 240 of the Penal Code defining an assault, has been held not to be synonymous with ''bodily harm,'' but to include any wrongful act committed by means of physical force against the person of another. (*People* v. *Bradbury*, 151 Cal. 675, 676 [91 Pac. 497].) In the case just mentioned it is said: ''The term 'violence' as used here is synonymous with 'physical force,' and in relation to assaults the two terms are used interchangeably. (*State* v. *Wells*, 31 Conn. 210, 212; *State* v. *Daly*, 16 Or. 240, 241 [18 Pac. 357]; Am. & Eng. Ency. of Law, 'Violence.') Mr. Bishop says (2 Crim. Law, secs. 32-34): 'The kind of physical force is immaterial . . .

it may consist in the taking of indecent liberties with a woman, or laying hold of and kissing her against her will.' ''

Repeatedly the courts of this state have held that one may be guilty of assault by means of force likely to produce great bodily injury although the attack is made by the use of the hands or fists. (*People* v. *Hinshaw*, 194 Cal. 1 [227 Pac. 156]; *People* v. *Kimmerle*, 90 Cal. App. 186 [265 Pac. 525]; *People* v. *Blake*, 129 Cal. App. 196 [18 Pac. (2d) 399]; *People* v. *Nudo*, 38 Cal. App. (2d) 381, 385 [101 Pac. (2d) 162].) ■ What force is likely to produce great bodily injury is a question of fact to be determined by the jury. (*People* v. *Nudo, supra*.) ■ In view of the injuries sustained by the complainant, as well as the manner of the assault made upon her, the jury was authorized to conclude that the manner of as well as the means used to perpetrate the attack constituted a felonious assault within the meaning of section 245 of the Penal Code. We therefore find that in the conviction of appellant under count 1 of the information no miscarriage of justice occurred. (Const., art. VI, sec. 4½.)

■ ■ In relation to counts 2 and 3 appellant urges that the testimony of the prosecutrix should be disregarded in view of the evidence of appellant coupled with the claim that more than a year and a half elapsed between the date of the commission of the alleged offenses and the lodging of a complaint by the victim. The jury was not required to believe the testimony of appellant and reject that of the prosecutrix if, as indicated by its verdict, it believed the latter and disbelieved the former. So far as an appellate court is concerned, we are authorized to reject the positive testimony of a witness only when that testimony is ''inherently improbable.'' Even though the testimony may disclose circumstances which are unusual, still we cannot disturb the action of the jury in believing it unless we can say that it would not seem possible that what was testified to have been done could have been done under the circumstances disclosed. Furthermore, in the instant case the testimony of the complainant finds corroboration in the evidence of her mother and her physician as to her physical condition, all of which serves to negative appellant's testimony that the act of sexual intercourse was committed with the consent of the prosecutrix. A reading of the entire record herein, instead of establishing an inherent improbability that the offenses charged in counts 2 and 3 were committed, tends strongly to establish reasonable inferences of appellant's guilt. The claim of appellant

that the victim waited an unusual length of time before making a complaint is not borne out by the record, which shows that she complained to her mother and stepfather immediately after appellant left her, and later that morning advised the doctor that she had been the victim of an attack. A few days thereafter she presented her complaint to the office of the District Attorney of Los Angeles County.

Appellant next assigns as error certain rulings of the trial court with reference to testimony offered to prove that the general reputation of the prosecutrix for chastity was bad. We are aware of the line of decisions in this state holding that in prosecutions for forcible rape testimony that the alleged victim had theretofore been guilty of unchaste acts is admissible for impeachment as to the manner in which the act was committed as well as for impeachment as to whether the crime of rape was committed at all. (*People* v. *Pantages*, 212 Cal. 237, 259 [297 Pac. 890], and cases therein cited.) However, we find no rulings of the trial court in the case at bar that contravene the foregoing rule. ■ The record herein indicates that when the reputation witness was called and testified that she knew "the general reputation in the community" of the prosecutrix "for chastity, truth, honesty and integrity," she was asked, "Is that reputation good or bad?", to which she replied, "Well, I would rather not say." During further examination the court asked the witness, "Do you know enough about her reputation to be able to answer that it is good or that it is bad?" To this interrogatory the witness answered, "Well, if you call a drinking person bad I would say that it was bad." On motion of the district attorney this last answer was stricken. The ruling was proper. Clearly the reputation of the complainant for sobriety was not in issue and was utterly foreign to her reputation for chastity. ■ Finally, however, defendant's counsel inquired of the witness, . . . can you say from your personal acquaintance with . . . (the prosecutrix) . . . whether her reputation for chastity is good or bad?" To this the witness answered, "Well, I would not say that it was good." Defendant's counsel then asked, "You wouldn't say that it was good?" to which the witness answered, "No." Thereupon counsel inquired of the witness, "Now, I will ask you the previous question: Do you recall any specific instance where the prosecutrix may have been involved in trouble previously to this case with a man other than this defendant?" Objection to this question was properly sustained. The fact that the pros-

ecutrix "may have been involved in trouble . . . with a man other than this defendant" would not tend to prove or disprove her previous chastity.

Finally, appellant urges a reversal on the ground that prejudicial error was committed by the court in the giving and refusal of certain instructions. In that regard, appellant offered an instruction which was refused and which read as follows: "You are instructed that the evidence in a case of this kind is to be weighed by the utmost care, without bias or prejudice; since in this class of cases the accused is almost defenseless and ample opportunity is afforded for the free play of malice and private vengeance."

It has frequently been held that error cannot be predicated upon refusal to give such a cautionary instruction, particularly where, as in the case before us, the story of the prosecuting witness is corroborated by other testimony. (*People* v. *Anthony,* 185 Cal. 152 [196 Pac. 47]; *People* v. *Agullana,* 4 Cal. App. (2d) 34, 38 [40 Pac. (2d) 848].) Furthermore, in the instant case the court gave general instructions to the jury as to the specific duty of each juror to decide the case for himself or herself conscientiously and only after a full and fair consideration of all the testimony without any bias or prejudice by reason of the nature of the charges for which defendant was on trial.

While conceding that certain other instructions for the giving of which complaint is made, when taken and considered separately, constitute correct statements of the law, appellant urges that by reason of the failure of the court to give the previously mentioned cautionary instruction, the other instructions, concededly correct expositions of the law, were nevertheless prejudicial to the defendant. In this contention we cannot agree with appellant. Instructions must be considered as a whole, and after reading the instructions given we are satisfied that they fully and fairly advised the jury in connection with each issue presented by the information and the defendant's plea thereto, as well as those issues which were raised by the evidence. Taken as a whole, or read separately, the instructions cannot be held to be either confusing to the jury or erroneous.

The judgments and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.