[Crim. No. 1784. Third Dist. June 11, 1942.]

THE PEOPLE, Respondent, v. MARCELLO BATTILANA, Appellant.

Sam Shortridge, Jr., and Lawrence Edwards for Appellant.

Earl Warren, Attorney General, J. Q. Brown, Deputy Attorney General, Raymond M. Dunne, District Attorney, and Robert N. Blewett, Assistant District Attorney, for Respondent.

THE COURT.—The defendant was convicted on four counts of an indictment for the crimes of (1) rape committed by means of force and violence, (2) rape committed by means of threats of bodily harm, (3) fellatio committed contrary to the provisions of section 288a of the Penal Code, and (4) the infamous crime against nature prohibited by section 286 of the Penal Code. Motions in arrest of judgment and for a new trial were denied. An appeal was taken from the judgment and from orders denying a motion in arrest of judgment and a new trial.

For grounds of reversal it is contended the testimony of the prosecutrix is inherently improbable; that the fourth count fails to state a public offense; that the judgment of conviction of the first and second counts is inconsistent; that the evidence of the prosecutrix, with relation to the crimes charged in the third and fourth counts, lacks corroboration as required by section 1111 of the Penal Code; that the court erred in excluding evidence of the general reputation of the prosecutrix for chastity, applicable to the first and second counts, and of particular conduct on her part tending to show a lack of chastity, and that the court erred in giving to the jury and refusing to give certain instruction.

The prosecutrix was twenty years of age. She was a cabaret dancer by occupation. She was employed in "Matty's Night Club" at Stockton for about a month prior to the date of the alleged offenses which are involved on this appeal. Her employment required her to be present and to dance at the club from 8 o'clock p. m. until 2 o'clock in the morning for the entertainment of customers. She lived in an apartment in the Main Hotel in that city. She met the defendant for the first time at the club two or three weeks before the time of her trouble. He was a regular frequenter of that night club, and occasionally talked with the prosecutrix. Just before closing time on the morning of August 1, 1941, the defendant invited the prosecutrix to have breakfast with him at "Johnnie's Waffle Shop," in the vicinity of the night club, where she was accustomed to eat her meals. She consented to do so. They went together in his car. He drove down the street, past the waffle shop, but failed to stop. When she called his attention to the fact that they had passed the waffle shop, he said that he knew of a better place to eat, in Tracy, which was only a few miles distant, and that he wanted to talk with a friend down there.

On the way to Tracy he drove the car at a reckless rate of speed, boasted of his influential standing with members of the local sporting fraternity, and with the peace officers, told her he was a "big shot" among them, exhibited the handle of a revolver in the glove compartment of his automobile, and inferred that he carried weapons in the trunk compartment of the machine. In other words, he tried to create the impression that he was a bold and dangerous man who was unafraid of law enforcement officers, and that he was able to accomplish his desires regardless of the law.

When they reached the Western Hotel in Tracy he persuaded her to accompany him into the lobby. They entered through the barroom to a back card room where she was seated. He ordered liquor which he drank with another man, she having refused to drink with them. He appeared to be on intimate terms of friendship with the men in and about the barroom and hotel. The prosecutrix remained in the card room for about one-half an hour while the defendant conversed with friends in the barroom, during which time he apparently arranged for the use of a bedroom on the second floor of the hotel. When he came back and indicated that he was ready to go, she supposed they would immediately return to their automobile. When they entered the hall of the hotel and reached the foot of the stairway he declared that they were going upstairs to a bedroom. When she protested, he struck and slapped her and threatened her with violence, saying that if she wanted to get out of that hotel alive she had better submit to his demands. He seized her by the arm and dragged her up the stairway to the bedroom. He tore her clothing from her person and violently threw her upon the bed. During the melee she screamed repeatedly, but he silenced her by striking and threatening her. She received scratches, and bruises and one cut at the corner of her mouth which bled freely. She testified that the reason she did not make a more determined effort to escape was that the men in and about the barroom appeared to be dangerous confederates of the defendant, as he told her they were, and she declared that she was afraid of great bodily harm or death at their hands. She testified that the defendant first secured sexual intercourse with her by means of force and threats of violence, and that he then committed upon her both the infamous crime against nature and fellatio. In the morning he arose, dressed

and brought a companion to the door of the bedroom threatening her with punishment if she did not consent to intercourse with him. She however defied him. He did not force her to submit. He then borrowed a dress belonging to the wife of a friend in the hotel, and forced her to put it on and to display herself in and about the barroom for the evident purpose of soliciting prostitution. The prosecutrix asserts and the evidence warranted the jury in believing that the defendant's brutal and lewd conduct toward her was to overcome her resistance and to prepare her for commercialized prostitution from which he might derive a profit.

At the urgent demand of the prosecutrix, the defendant returned with her to Stockton that afternoon. She immediately told her friends in the hotel, where she rented her apartment, of her harrowing experience, and upon their advice she promptly visited the office of the chief of police and again related the facts, making the criminal charges against him of which he was subsequently indicted.

The story of the prosecutrix is corroborated by other witnesses with respect to important circumstances. Several disinterested persons, who lived in the Western Hotel at Tracy, testified that they were awakened in the early morning by repeated unusual shrieks of a woman, indicating that she was in great fear or pain. At least one of those witnesses traced the commotion to the bedroom occupied by the defendant and the prosecutrix. Her soiled and bloody garments were produced in evidence, and the contents were analyzed. Several witnesses testified that they afterward observed her cut lip upon which there was the evidence of dried blood. There is ample evidence to support the verdicts of the jury and the judgment which was rendered against the defendant.

It is insisted that the testimony of the prosecutrix is false and inherently improbable and that the judgment should be reversed on that account. We think not. The details of her accusations are so revolting that we purposely refrain from reciting them. It is sufficient to say we have carefully read her entire testimony and that we do not consider it inherently improbable. Abhorrent as the circumstances are, the story produces conviction of the truthfulness of the essential facts related. The prosecutrix is an intelligent woman of mature age. She was previously acquainted with the defendant for only about three weeks. In a rigid and lengthy cross-examination there appears to be no material flaw in her evidence. In

many important respects her statements are corroborated by other distinterested witnesses.

Primarily the defendant contends that the story of the prosecutrix is false because she willingly consented to sexual relationship with him. He admits that he did have sexual intercourse with her. The questions as to whether he accomplished that purpose by means of force, or fear or threats of bodily harm were problems exclusively for the determination of the jury. They were all resolved against him. It is true that statements of some witnesses, who were called by the defense, conflict with certain claims of the prosecuting witness. But the weight of the evidence was also for the determination of the jury. Such conflict of evidence, created by the testimony of other witnesses, should not be given undue weight in determining whether the story of the prosecuting witness is *inherently* improbable. There are some corroborating circumstances disclosed by the record which seem to support the implied finding of the jury that her story was true and probable. For instance, as soon as she escaped from the defendant's control, and returned to her apartment in Stockton, she immediately related her harrowing ordeal to some of her friends. Acting upon their advice, she went with them to the office of the chief of police where she repeated her story and accused the defendant of the identical immoral acts with which he was subsequently charged by the grand jury. It seems reasonable to believe that if she had willingly submitted to the defendant's lascivious conduct it is not probable she would have voluntarily and promptly revealed to the public officers and to her friends the sordid facts of her ordeal, to her great humiliation, discomfort and disgrace. We are convinced her story is not inherently improbable.

Our courts have frequently declared that it is not the province of a reviewing court to hold the testimony of a witness to be inherently improbable unless it is so unbelievable and contrary to reason that its falsity may not be doubted. It has been held that such evidence must be so apparently false that reasonable minds may not differ regarding that conclusion before a judgment may be interfered with on appeal because of inherent improbability. (*People* v. *Jefferson*, 31 Cal. App. (2d) 562, 566 [88 P. (2d) 238]; 8 Cal. Jur. 590, § 582.)

█ The separate offenses charged in counts one and two of the indictment are not inconsistent. Count number one

charges the defendant with rape committed by means of "force and violence" under subdivision 3 of section 261 of the Penal Code. The second count charges him with rape committed by means of "threats of great and immediate bodily harm" contrary to subdivision 4 of that same section of the code. Clearly the code designates those offenses as separate and distinct crimes. It is apparent that a defendant may be guilty of accomplishing rape by means of actual force and violence as distinguished from mere threats of bodily harm or by the use of narcotics or other similar drugs. The statute contemplates that each of these separate crimes shall be consummated without the voluntary consent of the victim. Evidence which will justify a conviction of rape ordinarily requires proof that the complainant exercised all her power of resistance which was consistent with the surrounding circumstances. Subdivision 3 of that section assumes that the victim actually does resist, and that her opposition is overcome by the physical force of her assailant. The following subdivision of that section assumes that she does not resist, and, upon the contrary, that she is prevented from doing so through fear caused by his threats to inflict upon her great bodily harm, or that she is prevented from resisting by the administering of narcotic drugs or anaesthetic agency. We conclude that an assailant may be guilty of two separate offenses of rape as provided by the third and fourth subdivisions of section 261, if he accomplishes his purpose by resorting to physical force, and by also threatening great bodily harm, or by administering narcotics or anaesthesia. Under such circumstances he may be said to have overcome resistance by force, and to have also prevented further resistance by threats of great bodily harm or by the use of narcotics or anaesthesia. Applying the facts of the present case, there is substantial evidence that the defendant overcame the resistance of the prosecutrix by means of physical force. He seized her by the wrists and dragged her upstairs to the bedroom, where he tore her dress from her person, and struck and beat her, and then threatened her with great bodily harm or even death, if she did not submit to his demands. Moreover, the evidence in this case shows that he repeated the crimes with which he was charged, more than once on that same date. The questions as to whether he accomplished rape upon the prosecutrix by means of physical force, or by threats of great bodily harm, or by both, were problems for the exclusive determination of

the jury. Those questions were resolved against him. We are bound by those verdicts. The verdicts on the first and second counts of the indictment are not inconsistent.

The appellant contends that the judgment of conviction is void in so far as it applies to the fourth count of the indictment, which purports to charge him with the infamous crime against nature, contrary to the provisions of section 286 of the Penal Code, because it fails to state a public offense, since it is alleged that the crime was committed by having "carnal knowledge" of the body of the prosecutrix. The term "carnal knowledge" has been held to be synonymous with the phrase sexual intercourse. (*People* v. *Carroll,* 1 Cal. App. 2 [81 Pac. 680]; *People* v. *Allison,* 25 Cal. App. 746 [145 Pac. 539]; *People* v. *Hopwood,* 130 Cal. App. 168 [19 P. (2d) 824].)

The fourth count of the indictment reads in part:

"The said defendant . . . on or about the 1st day of August, 1941, did wilfully, unlawfully and feloniously commit the infamous crime against nature by then and there having carnal knowledge of the body of one . . . then and there a female person, in violation of section 286 of the Penal Code of the State of California, a felony."

On account of the degrading nature of the crime of sodomy it is uniformly held that it is not necessary to describe the offense with the same particularity which is required in other crimes. In 8 Ruling Case Law, page 335, section 366, it is said in that regard:

". . . by reason of the vile and degrading nature of this crime, it has always been an exception to the strict rules requiring great particularity and nice certainty in criminal pleading, both at common law and where crimes are wholly statutory. It has never been the usual practice to describe the particular manner or the details of the commission of the act, and, where the offense is statutory, a statement of it in the language of the statute, or so plainly that its nature may be easily understood, is all that is required."

We are of the opinion the fourth count of the indictment sufficiently charges the defendant with the commission of the "infamous crime against nature," which is specifically prohibited by section 286 of the Penal Code. That count was couched in the identical language of the statute, except that there was added the unnecessary statement that the crime

was committed by "having carnal knowledge of the body" of the named prosecutrix. The latter phrase was harmless. Used in connection with the charge of the infamous crime against nature, it could not possibly infer that the defendant was merely accused of having sexual intercourse with the prosecutrix in the ordinary manner. While the code does not specifically define the offense of the infamous crime against nature, it is commonly known to be that of sodomy. (*People* v. *Williams,* 59 Cal. 397; 58 C. J. 791, § 11; 39 W. & Phr., Perm. Ed., p. 418.) That heinous offense derived its name from the tribe of Sodomites in Palestine, which secured universal infamy from the abominable practice of that unnatural vice as a religious rite, which sin is said to have resulted in the destruction of Sodom and Gomorrah. Neither the defendant nor anyone else could be misled regarding the nature of the crime with which the defendant was charged. The infamous crime against nature is synonymous with that of sodomy. (*People* v. *Williams, supra.*) ▮ It is true that carnal knowledge includes sexual intercourse, as the previously cited cases declare. But clearly that is not all that the term "carnal knowledge" includes. It is our opinion that sodomy may not be committed without experiencing carnal knowledge of the victim. (8 R. C. L. 335, § 366.) The word "carnal" is derived from the Latin word meaning flesh. It is defined in The New Universities Dictionary at page 137, as: "Pertaining to the body, its passions and its appetites; animal; fleshly; sensual; impure. . . ."

Certainly that definition covers carnal knowledge of the body of another person by either natural or unnatural copulation. If the language of this challenged count was merely uncertain, that objection was waived by failure to demur to the indictment on that account.

The foregoing cases, relied upon by the appellant as upholding his contention that count four of the indictment fails to state a public offense, may be distinguished and are therefore inapplicable to the present indictment. The Hopwood case was determined on the authority of *People* v. *Carroll, supra,* and *People* v. *Allison, supra,* which were decided before the amendment to section 952 of the Penal Code was adopted in 1929, which change in the law greatly simplified and liberalized criminal pleadings. Since that amendment the information or indictment may be couched "in any words sufficient to give the accused notice of the offense with which he is accused." (*People* v. *Pierce,* 14 Cal. (2d) 639, 644 [96 P,

(2d) 784] ; *People* v. *Price,* 46 Cal. App. (2d) 59 [115 P. (2d) 225].) It is true that the Hopwood case, *supra,* was decided since the amendment to section 952. But that liberalized section is not mentioned in the opinion. We assume the court failed to take into consideration the liberal construction of criminal pleadings which now prevails. That decision was not approved by the Supreme Court. We therefore conclude those authorities are not controlling of the present case.

But even though it be assumed that count four of the indictment fails to state a public offense for the reason assigned by the appellant, which we do not concede, that does not require a reversal of the entire judgment. The other three counts, upon each of which the defendant was convicted, nevertheless state perfectly good causes of action.

■ By finding the defendant guilty of the infamous crime against nature, and of fellatio, as charged in the third and fourth counts of the indictment, the jury apparently determined that the prosecutrix was not an accessory to those crimes so as to necessitate corroborating evidence pursuant to section 1111 of the Penal Code. (*People* v. *Jensen,* 76 Cal. App. 558, 561 [244 Pac. 1086] ; *People* v. *Howell,* 69 Cal. App. 239 [230 Pac. 991] ; *People* v. *Miller,* 66 Cal. 468 [6 Pac. 99] ; 58 C. J. 794, § 18.) In the authority last cited it is said in that regard:

"Where the crime is committed without the consent of the prosecuting witness, it is not necessary that the testimony of the witness be corroborated."

The defendant denied that he committed either of the last-mentioned offenses upon the prosecutrix. On the contrary she positively asserted that he committed each of those crimes upon her, at least twice, without her consent, and by means of force, violence and threats of great bodily harm. She testified that "I was so scared of him I didn't know what to do."

Under the circumstances of this case we are of the opinion the determination of the jury that the prosecutrix was not an accomplice to those crimes rendered the production of corroborating evidence unnecessary. But assuming, without so deciding, that she may be deemed to have been an accomplice, the record contains an abundance of corroborating circumstances sufficient to comply with the requirements of section 1111 of the Penal Code.

■ We are of the opinion that evidence of the general reputation of the prosecutrix for unchastity together with

specific acts in proof thereof were competent with respect to the two charges of rape, since the defendant admitted having had intercourse with her, but asserted that she voluntarily submitted to that relationship. (*People* v. *Johnson,* 106 Cal. 289, 293 [39 Pac. 622]; *Valencia* v. *Milliken,* 31 Cal. App. 533, 536 [160 Pac. 1086]; *People* v. *Pantages,* 212 Cal. 237, 262 [297 Pac. 890]; 22 Cal. Jur. 392, § 40; 22 R. C. L. 1208, § 42; 52 C. J. 1079, § 109.) The reason such evidence is deemed to be admissible is concisely stated in the authority last cited, as follows:

"Where want of consent is an element of the offense charged, evidence of the prosecutrix's want of chastity is admissible, not as a matter of jurisdiction, but to show the probability of consent."

In support of that text numerous California cases are cited.

Likewise in 22 Ruling Case Law, at page 1208, it is said in that regard:

"Where, however, the defense rests on the fact of consent the character of the prosecutrix for unchastity is competent evidence as bearing on the probability of her consent to the act with which the defendant is charged, and the likelihood of her resisting the advances of any man, on the ground that it is more probable that an unchaste woman assented to such intercourse than one of strict virtue. . . . Where the defense is not based on any theory of consent to the act, but upon a denial by the defendant that he had ever had any carnal intercourse whatever with the girl, testimony as to unchastity is wholly immaterial."

█ The trial court sustained an objection to the defendant's offer to prove that the general reputation of the prosecutrix for chastity was bad. That ruling is assigned as erroneous. That evidence was competent and admissible only as applicable to the charges of rape which are contained in the first two counts of the indictment, for the purpose previously stated. It was not admissible as proof of the offenses charged in the last two counts. The defendant made no offer to limit its application to the charges of rape. Assuming, without so deciding, that the court should have received the evidence for the limited purpose for which it was competent, in spite of the fact that no such limitation of purpose was suggested by the defendant, we are of the opinion the rejecting of that offer was neither prejudicial nor reversible error, for the reason that evidence of specific acts was adduced which conclusively shows that the character of the prosecutrix

for chastity was bad. At least four witnesses testified to specific acts which leave no doubt that she was unchaste. That fact seems to have been conceded. That being true, the evidence of general reputation for that trait of character would serve no added purpose. The rejecting of that offer, even if it was sufficiently specific in form, was therefore harmless.

For the same reason the sustaining of an objection to the offer to prove that the prosecutrix appeared on the theatrical stage in San Francisco and elsewhere substantially nude was also harmless.

Finally the appellant contends that the court erred in modifying a proffered instruction to the jury which attempted to define the term "accomplice" as it is used in section 1111 of the Penal Code. In effect, that instruction declared that any participant in either of the crimes which were charged in the third and fourth counts of the indictment, who *"consented to the acts,"* is an accomplice. The court properly modified that instruction by inserting the word "willingly" before the phrase "consented to the acts." The challenged instruction, as amended and given to the jury, read, in effect, "Any participant in the offenses of the infamous crime against nature, or fellatio, who willingly consents thereto, is an accessory." That is a correct statement of the law. It is apparent that the instruction as originally presented was misleading and contrary to law. The very gist of these crimes, as they were charged in the indictment, is that the prosecutrix was forced to submit to both sodomy and fellatio by the physical violence and threats of the defendant to inflict upon her great bodily harm. It is clear that a victim who *consents* to the perpetration of sodomy or fellatio upon himself, solely because of the infliction of physical violence or on account of threats of great bodily harm, is not an accomplice to the crimes. The consent to participate in a crime, which constitutes one an accessory thereto, must be knowingly, willingly and voluntarily given, with full appreciation of the nature of the act.

In the case of *People* v. *Shaw,* 17 Cal. (2d) 778 [112 P. (2d) 241], at page 799, quoting with approval from 8 California Jurisprudence 173, section 253, the court defines the word "accomplice," as it is used in section 1111 of the Penal Code, as follows:

"The word 'accomplice' has been defined as including all persons who have been concerned in the commission of an

offense. [Citing numerous authorities.] In other words, one is an accomplice who knowingly, *voluntarily and with common intent with the principal offender units in the commission of the crime*. [Citing several cases.]'' (Italics added.)

Paraphrasing the preceding definition, one cannot voluntarily participate in the common intent and purpose with which the principal perpetrator commits a crime, if he merely consents to do so on account of physical force exercised against him, or because of threats of great bodily harm. To constitute one an accessory to a crime he must willingly, knowingly and intentionally participate therein, of his own free will. If he does so against his will, because of force, or fear, or even if he lacks mental capacity to comprehend the nature of the act, on account of infancy, infirmity of mind or otherwise, he is not an accomplice. (*People* v. *Dong Pok Yip,* 164 Cal. 143, 147 [127 Pac. 1031].)

The jury was fully and fairly instructed on the essential elements of the crimes for which the defendant was tried. We have read the entire charge and find no reversible error therein. There does not appear to have been a miscarriage of justice in this case.

The order of the court denying the defendant's motion in arrest of judgment is not appealable. (*People* v. *Dysart,* 39 Cal. App. (2d) 287 [102 P. (2d) 1091].) The proposed appeal from that order is, therefore, ineffectual and for that reason it is dismissed.

The judgment and the order denying defendant's motion for new trial are affirmed.