[Crim. No. 4646. Second Dist., Div. One. Nov. 14, 1951.]

THE PEOPLE, Respondent, v. LLOYD HUGHES, Appellant.

William Herbert Hall for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County defendant was accused of the crime of assault with a deadly weapon.  Following a

plea of not guilty trial was had before a jury which returned a verdict finding defendant guilty. ██ This appeal is from the judgment of conviction and the sentence pronounced. Since no appeal is authorized from the sentence imposed, the attempted appeal therefrom must be dismissed.

Epitomizing the factual situation which gave rise to this prosecution the record reflects testimony that at about 2 o'clock on the morning of November 11, 1950, one John Suarez entered a café at San Pedro, in the city of Los Angeles. He seated himself on what was called the third stool at the counter and ordered some food. Shortly thereafter, he left his seat at the counter and was proceeding to the rest room. Prior to the entrance of Suarez into the café, defendant, accompanied by two ladies, had entered. The occupied a space in the café at the far end of the counter, opposite where the victim Suarez sat and near the rest room. According to the testimony of Suarez one of the ladies was seated on what was referred to as the ninth or last stool at the counter. Defendant and another lady were standing beside her. The lady who was seated had her feet out in the aisle with her back towards the counter. Suarez bumped into the girl's legs as he was proceeding down the aisle. He told her he was sorry, whereupon the defendant cursed and asked Suarez why he didn't watch where he was going, to which he replied, ''Why don't you tell the woman to put her feet under the counter?'' Defendant came toward him and he ''backed away.'' One of the ladies with defendant said, ''No, don't do it,'' and at that time a shot rang out. The victim Suarez did not see anything in the defendant's hands and he, himself, had no weapon nor did he threaten to use one. He testified he felt a ''flash in his face'' and fell to the floor. There is testimony that although the defendant jumped at Suarez, neither one ''swung at the other''; there was no discussion and there was no argument or fight. About eight or nine seconds elapsed from the time defendant spoke to Suarez until the latter ''felt the flash.'' He was about two or three feet from the defendant at the time of the episode. There was no prior acquaintance between defendant and the victim.

After Suarez fell to the floor, defendant jumped over him and ran outside the café going to the Rancho San Pedro Housing Project, about five blocks away. While going through the grounds of the project he buried the gun in some hedges. He then went to another person's house and while he was there someone in the house said that the ''cops'' were outside.

He left and went to his own home where he buried under his mattress the remaining shells that he had for the weapon. He then left his home but remained around the vicinity of Los Angeles for several days. He interviewed an attorney on the night of the 13th and morning of the 14th and thereafter voluntarily surrendered to the police on the 14th.

The victim was taken to the receiving hospital where it was found he had a bullet wound on the left side of his nose. The gun, a .32 calibre revolver, was found on the project grounds by a boy and was delivered by the latter's mother to the police.

The female companions of defendant were called as witnesses by the prosecution and admitted being in the café at the time. One of them, Julie Mae Johnson, stated that the victim came over to her and asked her to dance, that she declined and he "kept asking her." That he "pulled" on her shoulder but did not hurt her. That he then turned to the other lady and asked her to dance but that she too declined. This witness stated that she did not hear any words between defendant and the victim except that the former told the latter to let the witness alone. According to this witness there was no actual fighting.

The other lady's story was somewhat at variance with the foregoing testimony. She stated that she was asked by the victim to dance first and that she declined. She also stated that Suarez touched her on the arm. That the defendant and the victim argued, and that they were hitting at each other with their fists. That she saw defendant with the gun in his hand and that she saw him hit at the victim with the gun which "went off" and the victim fell. According to the testimony of this witness, she actually saw the defendant remove the revolver from his coat pocket. Her testimony was, "Yes, he was coming out with it." That he also pointed it at the victim and then struck at the victim with the gun.

Upon surrendering to the police, defendant stated he had left home about 7 o'clock on the night preceding the altercation and went to downtown San Pedro. While there, at about 9:30 o'clock, he met a merchant seaman who asked for a loan of $10 on his gun. Defendant stated he gave $10 to the seaman and took the gun which was loaded. That he also received some extra shells with the gun which he kept in his possession. That he then returned to the Paradise Café where he had been prior to the episode here in question with the two ladies above referred to and a male companion. That they stayed there until about midnight drinking. They then

drove to the café here in question on Harbor Boulevard. The defendant further stated that the victim walked over to where he and his female companions were standing and asked the ladies to dance with him but that they declined. That he told the victim to "leave the girls alone," that they didn't want to dance. That the victim struck him on the side of the face with his fist. Defendant further stated he pulled the gun from his right front pocket and shot Suarez. Defendant was asked if the victim had anything in his hand at the time he shot him and he said, "No." He was asked if he saw anything in the victim's hand and he said, "No." He was asked if the victim picked anything off the counter and he responded, "No." That after the shooting he ran out of the café and hid the gun in the hedges of a housing project. He further stated that he then remained hidden around Los Angeles until November 14 when, following a conversation with an attorney, he surrendered.

On the following day in another conversation had with defendant he was asked whether he could at all times see the victim's hands, to which he then stated that the victim had his right hand in his pocket.

At the trial, defendant admitted being in the café with the two ladies. He testified that the victim came over and first asked one of the ladies to dance, then the other. That the victim placed his hands on the shoulder of one of the ladies and caught the other woman by the hand. That he told Suarez to let the lady alone. That the victim asked him what he had to do with it and that he said, "What do you care what I have to do with it?" That the victim made a "pass" at him with his fist but he did not hit him. That he made another "pass." That the first time the "pass" was made defendant jumped back. That when the victim was going to make still another "pass" he took his gun out, struck at the victim with it, and it "went off." He further testified that he had no intention of shooting the victim but that he did intend to hit him with the gun. He further testified that the victim had his hand in his pocket and that he (defendant) was afraid the victim was "going to use something on him." He further admitted stepping over the victim after the latter fell and running out of the place.

On this appeal appellant does not challenge the sufficiency of the evidence to sustain his conviction. It is his contention that the court committed prejudicial error by misdirecting the jury on the issue of flight, and in refusing to give an

instruction offered by him on the right of self-defense by a person who is being assaulted.

On the question of flight, the court instructed the jury as follows: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination."

The foregoing instruction is substantially in the language of section 1127c of the Penal Code, which section also expressly provides that "No further instruction on the subject of flight need be given."

There is no denial by appellant that the instruction given was in conformity with section 1127c of the Penal Code, nor does he deny that he fled from the scene of the alleged offense. His contention would appear to be that because some three days later he voluntarily surrendered to the police, it was the duty of the court, on its own motion, and without a request from him, to instruct the jury that this circumstance was to be considered in a light favorable to him.

There are two answers to this claim. In the absence of a request by appellant for a more specific instruction, the one given sufficiently covered the issue of flight as raised by the evidence. Under the instruction given the jury was left free to determine whether the action of appellant in leaving the scene of the claimed assault showed "a consciousness of guilt . . . in the light of all other proved facts." Under such language, the jury was at liberty to consider the evidence of flight in connection with the "proved facts," namely, that appellant voluntarily surrendered himself to the authorities some three days after the altercation. Evidence of this latter circumstance was before the jury and there was nothing contained in the instruction which precluded them from taking that evidence into consideration. Indeed, they were admonished to consider evidence of the claimed flight of appellant in connection with all the other circumstances shown in evidence, which, of course, would include the circumstance of subsequent voluntary surrender.

And secondly, undoubtedly it is the law that in a criminal case the jury should be instructed on the general principles of law which apply to the case, and even though

not requested by the parties, the court of its own motion, should give such instructions. But this rule is not applicable to specific points developed at the trial. ■ Where the jury is otherwise fully instructed on the general principles of law involved in the case it is not the duty of the court to instruct on specific points developed at the trial unless instructions thereon are requested by the parties (*People* v. *Klor*, 32 Cal.2d 658, 662 [197 P.2d 705]; *People* v. *Meichtry*, 37 Cal.2d 385, 389 [231 P.2d 847]; 8 Cal.Jur., "Criminal Law," §§ 362-363, pp. 309-312). There is nothing in the record to explain why appellant fled from the scene of the alleged assault, why he hid the gun, or why he remained in hiding for three days thereafter.

■ Finally, appellant contends that the court erred in refusing to give the following instruction offered by him:

"It is lawful for a person who is being assaulted, and who has a reasonable ground for believing that bodily injury is about to be inflicted upon him, to stand his ground and defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

"If you believe from the evidence, which has been admitted in this case, that John Suarez, one of the people's witnesses who testified herein, attempted to assault the defendant and placed his hands in one of his pockets as if to withdraw therefrom some weapon, from which conduct the defendant then and there reasonably believed bodily injury was about to be inflicted upon him, you are further instructed that the defendant had a legal right to use all force and means which he believed to be reasonably necessary and which would have appeared to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which then appeared to be imminent."

Assuming that under the evidence appellant was entitled to have the proffered instruction on self-defense given, we have carefully examined all instructions, both given and refused, and conclude that the jury was fully instructed upon that issue, and that there was no resultant prejudice to appellant.

The trial court gave an instruction in the identical language of the first paragraph of appellant's foregoing requested instruction.

The trial judge also gave an instruction requested by appellant and reading as follows:

"A person who has been attacked and who is exercising his right of lawful self-defense is not required to retreat, and he may not only stand his ground and defend himself against the attack but may also pursue his assailant until he has secured himself from danger if that course appears to him, and would appear to a reasonable person in the same situation, to be reasonably and apparently necessary; and this is his right even though he might more easily have gained safety by withdrawing from the scene."

These instructions fully and fairly advised the jury of the law applicable to that phase of appellant's defense, viz., that he was assaulted by the victim first. They contain a clear and correct statement of the rights of appellant to defend himself under the circumstances which he claimed existed at the time of the encounter between himself and the complainant.

Furthermore, the second paragraph of the foregoing instruction offered by appellant is objectionable and open to criticism because it selects certain facts claimed to be material, and would have the court indicate an opinion favorable to appellant as to the effect of such facts by incorporating them into an instruction containing a correct principle of law.

As was said by this court in *People* v. *Hill*, 76 Cal.App. 2d 330, 342 [173 P.2d 26]: "While section 1127 of the Penal Code provides that the court 'may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case,' the same code section emphatically declares that 'Either party may present to the court any written charge on the law, but not with respect to matters of fact. . . .' Therefore, instructions bearing on the weight to be attached to a particular piece of evidence are properly refused."

In the instruction offered by appellant the second paragraph is substantially a repetition of the first paragraph thereof, which was given by the court, with the exception of the fact that it contained reference to specific evidence. Repetitions of this character are not necessary and, as far as possible, should be avoided. Not only do such continued repetitions tend to give undue emphasis to the particular point to which they may relate, but they operate to confuse the jury in their consideration of the evidence.

The jury was correctly, fully and fairly instructed on all the necessary elements of the offense of which the appellant was convicted.

The attempted appeal from the sentence is dismissed, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.