[Crim. No. 2637. Third Dist. Nov. 30, 1955.]

THE PEOPLE, Respondent, v. EARL WAYNE ELLIS, Appellant.

Muir Woolley for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellant was charged with a violation of section 286 of the Penal Code, it being alleged in the information that he "did wilfully, unlawfully and feloniously commit the infamous crime against nature upon the person of Wallace Richard Page, a human being and a male person." He pleaded not guilty and a jury trial resulted in a verdict of guilty. His motion for a new trial was denied and judgment was pronounced against him. He has appealed from the judgment and from the order denying his motion for a new trial.

Appellant urges two major grounds for a reversal of the judgment: 1. That the evidence is insufficient to support the verdict because it consisted entirely of the uncorroborated testimony of the witness, Page, who, appellant contends, by submitting himself to the act of perversion became an accomplice within the meaning of section 1111 of the Penal Code; 2. That the court erred in failing to give the jury proper or any instructions with regard to accomplices and the necessity of corroborating their testimony. Before discussing these contentions we shall give a brief summary of the evidence.

Wallace Richard Page, the victim of the offense charged in the information, was taken to the Stanislaus County Road Camp on January 25, 1955, to serve a sentence for burglary. At about 5 o'clock of the afternoon that Page arrived, he encountered the defendant Earl Wayne Ellis, also an inmate of the road camp, in front of Page's barracks. At this first meeting Page asked the defendant about a disturbance which had occurred at Page's mother's café and defendant replied that they would talk about it later. After supper of the same day, defendant went to Page's barracks and engaged Page in a conversation about his sentence. During this conversation Page and defendant left the barracks and walked behind the latrine. While there, defendant told Page that defendant had served three months in the road camp because he had assaulted a girl in Page's mother's café. Defendant offered to fight but Page refused, offering defendant money if defendant wouldn't bother him. Appellant then told Page that Page would have the option of committing one of two types of sex perversion with him, and also that unless Page agreed to one or the other of these acts, defendant would get three or four men and force him to do so. When Page refused, defendant became angry and ordered Page to go to defendant's barracks. While in defendant's barracks, Trager, a friend of defendant, asked Page if he had "fixed Ellis up."

When Page said that he had not, Trager made the threat that unless Page did so three or four men would hold him and force him to do so. Then Trager told Page to leave and that Trager and defendant would come to get him later.

After the roll call the appellant came over to Page's barracks where they talked about a burglary for a while and then walked out together, meeting Trager on the outside of the building. The appellant led the way and they sneaked around to a boiler room. The appellant and Page went into the boiler room first, Trager following. Page testified that he accompanied both appellant and Trager to the boiler room in fear of being beaten up and having the acts committed anyway if he refused to go peacefully. In the boiler room, following the orders of appellant, Page submitted to the commission of the act denounced by said section 286, first by appellant, then by Trager, and again by defendant. All three men then left the boiler room and Page, who was the last to leave, returned to his barracks.

The following morning Page requested the director of the road camp to transfer him back to jail. He testified that he was afraid to reveal the acts done by defendant and Trager the night before as a reason for wanting a transfer, and since he had no other reason to give, his request was denied.

On January 29, 1955, Page left the road camp and started in the direction of Modesto. He testified that he left the road camp because of his fear that he would be further attacked by appellant's friends, although Ellis had left the camp on the night of the 26th. He was apprehended by officers on the way and taken to the county jail where he revealed for the first time what defendant had done to him.

Appellant did not testify but called two witnesses for the purpose of impeaching the complaining witness, Page, as to his reasons for leaving the road camp. Both testified to conversations with Page in which he made no mention of any improper acts by appellant but gave other reasons for desiring to leave the road camp. Appellant's father was called and testified that he had never heard that appellant was abnormal sexually.

It is apparent from the foregoing that the judgment of conviction depends upon the testimony of Page and that therefore the principal question presented upon this appeal is whether or not it can be held as a matter of law that Page was not an accomplice. Section 1111 of the Penal Code provides:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable for prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

In *People* v. *Featherstone,* 67 Cal.App.2d 793 [155 P.2d 685], an attempted sodomy case involving a 15-year-old boy, the court said at page 796:

"Undoubtedly, where the persons participating in an offense of this character do so without compulsion each is an accomplice of the other, and is liable to prosecution as such. In such case there is a common intent to unite in the attempt to commit the offense."

Appellant argues that Page's testimony shows that during the time appellant was at Page's barracks after roll call and they met Trager outside and went to the boiler room where the acts were committed, there were no threats made. Appellant argues that these facts establish that Page voluntarily participated.

In answer to respondent's contention that Page was not an accomplice because he was coerced and forced to submit to appellant's preverted attack in fear of great bodily harm, appellant cites section 26 of the California Penal Code:

"All persons are capable of committing crimes except those belonging to the following classes:

.   .   .   .   .   .   .   .   .   .   .   .

"Eight. Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."

The appellant contends, in effect, that not only was there a lack of evidence of immediate threats to Page, but also that there was no evidence of threats of danger to Page's limb or life. Appellant argues that the record only shows statements that Page was told that if he did not conform to the other parties' wishes they would do it anyway, and that these statements were made several hours before the acts occurred.

Appellant also cites the case of *People* v. *Hart,* 98 Cal.

App.2d 514 [220 P.2d 959] (hearing denied), which was a prosecution for sex perversion in which the evidence showed that the defendant displayed a knife while he proposed the commission of the act. The prosecution contended that the witness being in such a position was not an accomplice when he acquiesced because acting under coercion. In holding contrary to the People's contention that the witness was not an accomplice, the court said, at page 515:

" 'An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.'

"Under this definition M is an accomplice unless the evidence is sufficient to support a finding bringing the case as to him within subdivision 8, section 26 Penal Code above quoted, i.e., that M did believe that his life would be endangered if he refused. [Citing cases.]

"The People argue that the evidence shows that M was afraid that if he resisted it would endanger his life. Not only did M not testify at any point that he feared that his life was in danger but he expressly twice testified:

" '. . . I did participate because I was afraid to break my leg over again and didn't want to fight him back.'

" 'I didn't want to break my leg over again.'

"A reading of the entire evidence satisfies us that it is not sufficient to support a finding that M actually believed that his life was in danger."

Appellant argues that the Hart case above was a much stronger case than the present for finding duress, as there was no weapon involved here and no threats near the time of the act. Respondent, in reply, contends that appellant's assertion that Page must have feared that his life was in danger in order not to be an accomplice is not a complete statement of law and cites *People* v. *Battilana,* 52 Cal.App.2d 685 [126 P.2d 923], in which the court stated, at page 697:

". . . It is clear that a victim who *consents* to the perpetration of sodomy or fellatio upon himself, solely because of the infliction of physical violence or on account of threats of great bodily harm, is not an accomplice to the crimes. The consent to participate in a crime, which constitutes one an accessory thereto, must be knowingly, willingly and voluntarily given, with full appreciation of the nature of the act."

Respondent asserts that *People* v. *Peterman,* 103 Cal. App.2d 322 [229 P.2d 444], decided subsequent to the Hart

case, refutes the appellant's theory that the Hart case, *supra,* established that a fear of death is necessary to hold that Page was not an accomplice, in holding:

". . . Where a violation of said section 288a is committed without the consent of the prosecuting witness, it is not necessary that the testimony of such witness be corroborated. . . . A person who participates in an act in violation of said section solely because such person has been threatened with, and is in fear of, great bodily harm, is not an accomplice. (*People* v. *Battilana, supra* [52 Cal.App.2d 685, 695].)"

However, in the Peterman case defendant accomplished rape and fellatio by pushing her into the back seat of his car and threatening to kill her.

Respondent asserts that there is no pat definition for what will constitute great bodily harm, but it may result from an attack with hands and fists (*People* v. *Bumbaugh,* 48 Cal. App.2d 791 [120 P.2d 703]; *People* v. *McCaffrey,* 118 Cal. App.2d 611 [258 P.2d 557]), and it has been held that a person may have a reasonable fear of great bodily harm even though no spoken threats as to possible consequences are made. (*People* v. *Flores,* 62 Cal.App.2d 700 [145 P.2d 318].)

We believe that under the evidence in the instant case it was for the jury to determine, under proper instructions, whether or not Page was an accomplice of appellant. We do not believe that, as a matter of law, the evidence compels the conclusion that Page participated in the acts charged against appellant only because of fear of great bodily harm, nor do we believe that the degree of resistance shown by him was sufficient, as a matter of law, to compel a finding that he was not an accomplice.

As stated in *People* v. *Coffey,* 161 Cal. 433, at page 436 [119 P. 901, 39 L.R.A.N.S. 704]:

"When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury touching the law of accomplices, and leave the question whether or not the witness be an accomplice for the decision of the jury as a matter of fact."

Appellant offered a number of instructions regarding the testimony of accomplices but the court refused to give any of them. The only instruction given by the court which can be considered as relating to accomplices was as follows:

"Any person who, with full appreciation of the nature of the act, voluntarily, willingly or knowingly consents to the commission of the infamous crime against nature upon his

body and thus intentionally participates in the conduct, is equally guilty with the other participant.''

Nowhere in the court's instructions does the word ''accomplice'' appear.

Respondent argues that ''the court did not err in refusing to submit instructions on accomplices to the jury because there was no conflict in the evidence.'' However, we are satisfied that under all the facts and circumstances shown by the record there was a reasonable basis for an inference that Page's participation in the crime charged was not because of fear of great bodily harm, and that his failure to ask the authorities in charge of the road camp for protection after he had been informed of appellant's intention to commit the act, his failure to tell the same authorities of the commission of the act, his failure to tell about it until after his escape from the road camp and his apprehension, were circumstances that the jury might well have taken into consideration, together with the remainder of the evidence, if they had been instructed as to the rules of law applicable to the testimony of accomplices and that they should determine from the evidence whether or not Page was an accomplice.

Even though appellant did not request the specific instructions that should have been given in this case, we believe that the court should not only have instructed the jury fully as to the law relating to the testimony of accomplices but should have instructed the jury that they should decide whether or not Page was an accomplice. ▪ For as stated in *People* v. *Hughes,* 107 Cal.App.2d 487, at page 492 [237 P.2d 64]:

''. . . [U]ndoubtedly it is the law that in a criminal case the jury should be instructed on the general principles of law which apply to the case, and even though not requested by the parties, the court of its own motion, should give such instructions.''

And as stated in *People* v. *Buffum,* 40 Cal.2d 709, at page 724 [256 P.2d 317]:

''Defendants did not request an instruction based upon section 1108. In a criminal case, however, the trial judge is required to instruct the jury of his own motion upon the law relating to the facts of the case and upon matters vital to a proper consideration of the evidence. [Citing cases.] Under this rule it has been held that, in an appropriate case, the jury must be instructed as to sections 1110 and 1111 of the Penal Code, which, like section 1108, provide that the

testimony of certain witnesses must be corroborated. [Citing cases.] It follows, therefore, that the trial court erred in failing to give an instruction on its own motion with respect to section 1108.''

In the instant case it is not contended that there was sufficient corroboration of Page's testimony to support the judgment of conviction. We therefore conclude that the failure of the trial court to give proper instructions on the subject of accomplices and as to the necessity for corroboration of their testimony constituted reversible error.

The judgment and order are reversed.

Van Dyke, P. J., and Peek, J., concurred.