[Crim. No. 3624. Second Dist., Div. Two. Sept. 30, 1942.]

THE PEOPLE, Respondent, v. HUGH R. AVERETT, Appellant.

Leonard Wilson and Gordon M. Gale for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WOOD (W. J.), J.—A jury found defendant guilty of murder in the first degree and fixed the penalty at life imprisonment. Defendant has appealed from the judgment of conviction and from the order denying his motion for a new trial.

 In support of his contention that the evidence is insufficient to support the verdict defendant argues that there is no evidence of premeditation or malice, but a statement of the more important facts established by the evidence discloses that this contention is without merit.

It is conceded that on January 13, 1942, defendant shot and killed Bennett Shaffer, who had been his son-in-law. Defendant claimed, however, that he shot in self-defense. The daughter of defendant, Teresa Shaffer, died on September 18, 1941, from arsenic poison. The following month defendant appeared at police headquarters in the city of Glendale and stated that Shaffer was a murderer and that he knew his daughter had come to her death through foul play. The police officers informed him that a physician's examination and the verdict at the coroner's inquest showed that Teresa Shaffer had come to her death through arsenic poison taken with suicidal intent. About two weeks later defendant again appeared at the police station with a small bottle which had contained Kellogg's ant paste. He placed the bottle on the desk and said, "Here, if you God dam cops had made an investigation you would have found this." He stated that he had found the bottle "on top of the garage in back of Mr. Shaffer's home" and said, "I want a thorough investigation made of that. I think it was foul play." A police officer told him that the investigation was closed, whereupon defendant stated that he would go to the district attorney's office to see if he could get action. He was told to go ahead and see if he could get any action, and as he departed he turned and said, "Well, if I can't get action over there, I am going to

see to it myself that justice is done.'' In the following January defendant walked into the police station and said, ''I have just killed my son-in-law. Lock me up.'' Officers went to the Shaffer residence and found Shaffer's body lying partially in the kitchen and partially in the room between the kitchen and the bedroom. One bullet had pierced Shaffer's chest from the front and another bullet had pierced his neck from the rear. The revolver with which the shooting had been done was found on the top of the washing machine in the room between the kitchen and the bedroom.

In a statement made to the police officers concerning the shooting defendant stated that Shaffer had had an argument with defendant's wife and later in the day defendant had reproached Shaffer for calling his wife a dirty name; that thereupon Shaffer had drawn a revolver, calling defendant a dirty name, and had asked him what he was going to do about it; that Shaffer laid the revolver on the sink and started to get a drink of water; at that time defendant saw the opportunity to get the gun so he grabbed it and shot Shaffer twice. At the police station defendant further stated: ''Q. Mr. Averett, just where were you standing in the room at the time the gun was actually pulled out of Mr. Shaffer's pocket and he placed it on the sink? A. I was standing by the stove and he was at the sink. Q. How far is the stove from the sink? A. About six feet. Q. Was he facing you or did he have his back to you? A. He was facing me when he pulled the gun. He had a drink of water in his hand and had laid the gun on the sink and I reached over and grabbed it. . . . Q. Mr. Averett immediately after you shot at your son-in-law, Mr. Shaffer, did he make any remarks? A. No. Q. Did he try to get away or ward off the shots? A. He started like he was going to the bathroom. That was the way I saw it, he reeled and fell and I shot him again. Q. Was that after he had started to go to the bathroom? A. Yes. Q. Was he still on his feet when you fired the second shot? A. No, I don't think he was.''

The jury could reasonably conclude that defendant had charged Shaffer with the murder of his daughter and that he had made threats against Shaffer. From the circumstances of the shooting, not only from the bullet wound in the back of Shaffer's neck but from the statement made by defendant concerning the shooting, the jury could reasonably conclude that defendant did not shoot in self-defense and that the killing was done with malice and premeditation. Since the

verdict of the jury finds sufficient support in the evidence the reviewing court may not disturb it.

■ Defendant complains of the action of the trial court in permitting the use of a document containing questions asked of the defendant at the police station and his answers thereto, the document not having been signed by defendant. When defendant was examined at the police station the questions and answers were taken down by a reporter and later transcribed. At the trial the circumstances of the conversation were shown in evidence and a witness testified that the questions were propounded and answers were given as shown in the document. The document was admitted in evidence without objection from defendant and was read to the jury. The approved practice in such situations is to use the document to refresh the memory of the witness. (*People* v. *Amaya*, 44 Cal. App. (2d) 656, 658 [112 P. (2d) 942].) If defendant had objected to the practice followed in this particular instance the trial court doubtless would have ruled that the document could be used for the purpose of refreshing the memory of the witness. By his failure to object defendant must be deemed to have consented to the reading of the document to the jury, which resulted in a saving of time. He was not prejudiced by the procedure followed.

Defendant contends that the court erred in giving certain instructions and in refusing to give other instructions which he had requested, but he does not make the slightest attempt to comply with the rule of the court which requires that where the giving or the refusal to give instructions is claimed to be erroneous all of the instructions bearing on the subject must be printed in the appellant's brief. The trial court fully and fairly instructed the jury on the rules of law applicable to the issues and nothing has been called to our attention to indicate that defendant has been prejudiced by the giving of any instruction or by the refusal to give any instruction requested.

■ Defendant contends that the district attorney was guilty of misconduct in several instances, without setting forth in his brief the acts which he claims were error and without showing wherein he was prejudiced. At one place in his brief he claims that the prosecutor's conduct was reprehensible "in that he used the word 'murder' in the presence of the court and the jury." Surely the word, murder, could properly be used by the prosecutor in a trial in which the defendant was

charged with murder. Defendant has not pointed out in his brief in what manner the conduct of the prosecutor was improper or in what respect he was prejudiced. ■ In another place in his brief defendant refers to the "conduct of the district attorney using a gun on the witness, and appellant while testifying, and using a threatening manner in such way as to interfere with the testimony of said witness." The charge that the prosecutor "used a gun" on defendant at once arrests attention. In this instance defendant has referred to the page and lines of the transcript to support his charge and upon turning to the transcript we find the following: "Q. At any rate, after he made this statement, you shot him? A. I didn't shoot him until he got in the crouching position and I felt my life was in danger, and then I pulled the trigger. Q. At the time that you picked the gun——. A. Don't point that at me, please (indicating gun). Q. I am sorry, I thought you couldn't hear. At the time you picked the gun up——. Mr. Wilson: Just a moment. If he can't hear it won't help him any to point a gun at him. The Court: There is nothing before the Court. You may proceed, Mr. Galliano." We find nothing in the record to substantiate the charge that the prosecutor was "using a gun on the witness." The most that can be said, as far as the record discloses, is that defendant and his counsel did not like the way the prosecutor was handling the weapon at the time of the cross-examination. It does not appear from the record how the weapon was being handled or in what direction it was being pointed. The trial court did not find that the occasion called for an admonition to the prosecutor and did not direct any change in his actions. If indeed there had been prejudicial misconduct on the part of the prosecutor during the course of the trial the matter could have been called to the trial court's attention as a ground for a motion for a new trial. The way was open to defendant to present affidavits showing what had actually taken place at the time of the incident of which complaint is made but he did not see fit to file affidavits on this point. The serious charge made by defendant on the subject of "using a gun" must be held to be groundless.

■ Defendant complains of the following statement which was made by the prosecutor during his address to the jury: "I want to also state to you the same statement that Mr. Wilson has made to you that is, that it is up to you to decide the facts in this case and I will assure you that if you convict

this defendant on the evidence that has been introduced here there won't be any reversal of this case.'' That part of the statement in which the prosecutor stated that there would be no reversal in the event of the conviction of the defendant cannot be considered as legitimate argument, as it had no bearing upon any of the issues to be decided by the jury. In a part of the statement the jury were told that it was their function ''to decide the facts.'' We fail to see how the statement of the prosecutor resulted in prejudice to defendant.

Other points made by defendant are not of sufficient importance to call for discussion herein. We are satisfied that the defendant was given a fair trial and that the conviction should be sustained.

The judgment and the order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.