[Crim. No. 654.   Fourth Dist.   Mar. 2, 1948.]

THE PEOPLE, Respondent, v. FRED SHELDON, Appellant.

Fred Sheldon, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Wm. E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was charged in two counts with assault with a deadly weapon upon one George Woodhams, and in the third count, with an assault upon him, by means of force likely to produce great bodily injury, by violently striking him about the face. Defendant entered pleas of not guilty. At the conclusion of a jury trial, on motion of the district attorney, counts one and two were dismissed. Defendant was then found guilty of battery, a lesser offense included within the charge. Defendant was sentenced to 60 days in the county jail. No motion for new trial was made. This appeal is from the judgment.

The testimony of the complaining witness, if believed by the jury, clearly establishes defendant's guilt. He testified generally that he was an entomologist for a pest control association, and lived in Ontario; that on the night of January 11th, 1947, he attended a show in San Bernardino; that while driving through Fontana on his way home, at about 1 a. m., he noticed a spotlight being flashed on the road just ahead of him; that it was later flashed in his eyes; that he turned his car around to obtain the number of the car flashing the light; that there was a man and woman in it; that he proceeded on his way and that that car proceeded to follow him and struck his car in the rear; that shots were fired; that they proceeded until the complaining witness reached Upland; that he stopped his car and defendant was right behind him; that defendant got out and had a shotgun in his hand and flashed a light on him and yelled: "You stand still and don't move or I will shoot you"; that he noticed defendant had on some kind of a uniform; that he said to him: "If you are an officer why don't you show a red light or use a siren?"; that the defendant said he did not have that privilege (he was a night patrolman for the Sheldon's Detective Service, with a special deputy sheriff's badge); that defendant approached him all crouched over and pointed his gun at him and started to curse; that defendant threatened to handcuff him; that he heard a squeaking of leather and he felt an object "jammed in the middle of his back" and defendant said: "If you move I am going to shoot you." Defendant was carrying a revolver on his person at the time. He then testified that handcuffs were placed on him by defendant; that he felt himself being suddenly whirled around and that was the last he remembered until he "came to" in the police station. He testified that at that time his left

eye was swollen badly and was bleeding; that his head pained him terrifically and his lower teeth were cracked on the inside; that he had had glasses on and there were glass cuts all around his eye; that the doctor removed a considerable amount of glass from his eye and that it was later "sewed up." These injuries were verified by a physician who attended him. A photograph of the complaining witness clearly shows the results of his eye injuries, as described by him. He then stated that he smelled liquor on defendant's breath.

Witnesses, who came out of a near-by building, corroborated his story in many respects, i. e., that the defendant used loud, obscene language and that the complaining witness was inquiring what authority defendant had to arrest him; that after the handcuffs were "clicked" on the complaining witness there was heard a "terrific pop"; that they observed Woodhams fall to the ground; that defendant remained standing and ordered Woodhams to get up; that defendant picked him up by the collar and the police then arrived; that they told defendant: "That is no way to treat a prisoner, to handcuff him and then sock him"; that Sheldon said he was sorry that the witness "didn't see the law the way he saw it."

The police found bent glass frames, a broken lens, and drops of blood on the grass where the scuffle ensued. A shotgun was found on the grass about 12 feet south of the broken glass, with blood stains on it. One witness said he saw defendant pick up the gun and put it in his car, although he did not see Sheldon "tackling Woodhams." Defendant and the complaining witness were taken to the police station and questioned. Sheldon told the chief that he guessed he was in "quite a jam"; that he saw Woodhams, leaning against the door of the Hobby Knobby Store, one of the places he was to inspect in his nightly rounds; that he got out of his car to question him and that Woodhams started to leave in his car; that he pursued him thinking he was a burglar; that he cornered him in Upland and took him into custody; that Woodhams bit him on the thumb and that at that time he struck the complaining witness; that he knew he was wrong in so doing. Sheldon said he never had the shotgun out of the car; that he could not account for the blood on the gun. The chief smelled the odor of alcohol on defendant's breath and defendant admitted he had had "a few shots" but claimed that he was not drunk. The chief then testified that

they examined the shotgun and it had an odor of burnt powder; that Sheldon had a revolver on him that night and he found two empty shells and four loaded ones in it; that the chamber of the gun showed indications of recent firings; that Woodhams was still wearing the handcuffs when he arrived at the station; that defendant said he was licensed under the state law and had a license to carry a "shotgun and a machine gun" and was also deputized as a deputy in Los Angeles and San Bernardino Counties. The next day defendant told the chief that he fired two shots in the air to stop the complaining witness; that he did strike him while he had the handcuffs on him and signed a written statement to this effect. However, defendant claims someone inserted the last clause (about striking the complaining witness) therein after he had signed it.

The proprietress of the Hobby Knobby Store, who lived in the rear, testified that she had two dogs; that on the night in question they barked; that she got up but did not see anyone; that the complaining witness came to her home two days later and asked her: "What kind of thugs she had to guard her place," stating that they were drunk and. had shot at him. She testified that Woodhams told her that he was in her yard that night and was fired at twice. A deputy sheriff testified that he went to her property within an hour or so after the arrest of defendant and investigated the premises and found no signs of an attempted "break-in," and that no dogs barked. Other close neighbors testified that they heard no unusual noises about the premises that night. One testified she heard shots fired down the highway about 1 a.m.

The woman occupant of defendant's car, Mrs. Jones, was arrested for being intoxicated. She claims she entered a plea of guilty under coercion of the police and was fined $25. She told the officers that she was defendant's common-law wife. She signed a statement as "Mrs. F. S. Sheldon." On the witness stand she corroborated the defendant's story.

Defendant, after producing several character witnesses, testified that he observed an automobile in the driveway of the Hobby Knobby Store and saw a person in the shadows and that he spoke to him and the complaining witness asked him: "Who are you?"; that the suspect got in his car and backed into defendant's car and then started off; that he shot his revolver two times in the air to stop him; that pursuit followed and he stopped him in Upland and attempted to

place him under arrest; that the complaining witness struggled with him when he tried to put handcuffs on him and that they both got hold of each other and fell to the ground; that the complaining witness bit him. He admitted he had had a cup of coffee and "one shot" to drink.

Mrs. Lenore Sheldon, wife of defendant, testified that she operated the Sheldon Detective Agency and Patrol; that her husband assisted her; that she had requested Mrs. Jones to go with her husband that evening as a witness.

Although defendant was represented by able counsel at the trial, he was unsuccessful in obtaining them or another attorney to represent him on this appeal. He has appealed in propria persona. As we analyze his briefs, his points on appeal are: (1) That the evidence is insufficient to sustain the verdict of guilty of battery in this: (a) that there was no evidence, except the extrajudicial statements of the defendant, that defendant struck Woodhams; (b) that if he did in fact strike him, it was in self-defense; (c) that whatever force was used by him was used in making the arrest as a special deputy sheriff.

We have examined the entire record and have related, in detail, certain portions of the evidence bearing on these questions. It seems clear to us that the complaining witness was in fact injured about his face and eye. His glasses were broken and particles of glass were removed from the eye. He had cuts about the face. It does not seem logical to us that such injuries were self-inflicted. Other eyewitnesses saw the defendant and the complaining witness and testified that after the handcuffs were "clicked" on the complaining witness there was heard a "terrific pop." The circumstances related, when considered with defendant's admissions, justify the conclusion of the jury that a battery was committed and might well have supported a more serious charge. (*People* v. *Bumbaugh*, 48 Cal.App.2d 791 [120 P.2d 703]; *People* v. *Hinshaw*, 194 Cal. 1 [227 P. 156].)

A copy of the instructions given to the jury were left with this court by the defendant, accompanying his opening brief, for our consideration. It appears therefrom that a proper instruction on the question of self-defense was given. That issue of fact was decided by the jury adversely to the defendant.

It also appears that an instruction was given at defendant's request as to the amount of force defendant was entitled to use in making a lawful arrest. The subject was fully covered.

It is next contended that since there was no evidence that defendant struck Woodhams and therefore no corpus delicti established, the trial court erred in admitting his extrajudicial statements. We see no merit to this contention for the reasons above expressed. No objection was made to the introduction of those statements at the trial.

Mrs. Jones, on cross-examination, admitted signing the name of Mrs. Sheldon to her statement. She testified that she was not intoxicated that night and claimed that she did not say the things set forth in the statement. She was then asked if she did not plead guilty to a charge of being intoxicated at the time. Objection was made to the question by the prosecutor which was, after some argument, sustained and the jury admonished to disregard it. We see no prejudicial error in this respect.

The next point arises out of the forms of verdict submitted. Three forms were given to the jury, one "guilty" and one "not guilty" verdict as to count three, and one "guilty of battery an included offense". It is argued that the trial court should have given the jury an additional verdict of "not guilty of battery an included offense." There is no merit to this argument. Under the charge, as submitted to the jury, it was not necessary for the jury to be furnished with such a verdict.

Error is claimed in reference to a question asked by the district attorney of a prosecuting witness, Mrs. Bono, proprietress of the Hobby Knobby Store. To the claimed surprise of the district attorney, she testified that although she told Woodhams she heard no commotion or disturbance the night of January 11th, she now would say she heard a commotion. The district attorney then asked her if she had any bias or prejudice against the district attorney's office. She answered: "No, sir." He then propounded the question whether it was not a fact that the district attorney's office had prosecuted her husband on a charge of assault with a deadly weapon. Objection was made. The court sustained the objection and instructed the jury to disregard the question. No prejudicial error resulted.

Lastly defendant, for the first time on appeal, raises a question as to the alleged conduct of some of the jurors. Attached to defendant's opening brief are several purported affidavits reciting that a certain witness for the prosecution remarked to one of the jurors during recess: "We have got

to get a conviction on this or George will be sued.'' It does not appear from the record that such a happening was called to the attention of the trial judge either at the time or on a motion for new trial. No opportunity has been afforded the People to admit or refute the charges.

■ The last charge of misconduct of a juror is reflected in affidavits appended to defendant's brief reciting that one juror was sleeping during the reading of the instructions. This claimed fact was also raised for the first time on appeal and in the manner indicated. Defendant is now precluded from raising, for the first time, such claimed conduct as ground for reversal. (*People* v. *Emmons*, 7 Cal.App. 685, 702 [95 P. 1032] ; *People* v. *Averett*, 54 Cal.App.2d 625 [129 P.2d 739] ; *People* v. *Galloway*, 202 Cal. 81 [259 P. 332].) ■ There may be other persuasive arguments advanced why the claimed conduct was not prejudicial error. There is no proper showing that the juror was not merely resting his eyes and did not at all times hear the instructions being read, nor if he was asleep, as claimed, is it shown who caused him to fall asleep or whether it was during the reading of the People's instructions or the reading of defendant's instructions that he fell asleep, or that the attention of the court was called to the fact, or, as indicated by defendant's own statement, it would have made any difference in the verdict rendered if he had been awake. Defendant recites that he did call his own attorney's attention to the fact and his attorney made no objection but replied: ''He is just along for the ride and will vote either way.''

In view of the fact that the defendant is representing himself on this appeal we have thoroughly examined the instructions refused and given and the entire record of the evidence. Our conclusion is that the defendant had a fair and impartial trial and that the evidence fully justifies the verdict and punishment inflicted.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied March 15, 1948, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1948.