[Crim. No. 1047.   Fourth Dist.   Mar. 2, 1956.]

THE PEOPLE, Respondent, v. DONALD LEROY JOHNSON et al., Appellants.

664

Edgar G. Langford, J. Perry Langford and Adolph Zuber for Appellants.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendants were charged with the crime of possession of a narcotic (marijuana) in violation of section 11500 of the Health and Safety Code. Smith admitted two prior felony convictions charged and a jury trial was had which resulted in verdicts of guilty as to each defendant. Motions for a new trial were denied and defendants appeal from the judgments of conviction and from the order denying a new trial.

On May 3, 1955, at approximately 3 a.m., two police officers (Kennedy and Bills) noticed a Buick convertible being driven north on Pacific Highway in San Diego in an erratic manner. Officer Kennedy testified that the Buick "appeared to be above the speed limit, following very closely another car on the highway. The Buick would approach the rear of the other car rapidly and then suddenly slam on the brakes as if he were suddenly aware of the car in front of him"; that this occurred several times and the Buick (being driven by defendant Johnson), as it proceeded north on Pacific Highway, was swerving from lane to lane "at times swerving towards the center island, practically striking it." Upon witnessing this erratic driving for about two blocks, the officers stopped the Buick and observed there were four people in it. Defendant Johnson was in the driver's seat, defendant Funzell Smith was seated directly behind him in the back seat, one Duran was in the front seat beside Johnson, and one Graham was in the rear seat next to Smith. Officer Kennedy testified that he asked defendant Johnson for his operator's license and that Johnson appeared to him to be "under the influence of something. . . . His answers were somewhat slow, his speech a little slow, his eyes were dilated, and his eyelids were slightly droopy." Johnson was then asked to step from the car and "staggered, swerved a small amount." A field sobriety test was administered to him but it was not completed because Officer Kennedy was of the opinion that Johnson had not had enough to drink to fail a sobriety test. Kennedy further testified "I felt it was something. I didn't know whether it was alcohol or what. I felt there was something affecting him; he was under the influence of something. How-

ever, not strongly enough to fail the 502 test''; that while he was talking to Johnson, Officer Bills remarked ''something was wrong here'' or words to that effect. Officer Bills talked to Duran and Graham and while Duran was coherent and responsive to questions, Graham was barely able to stand without assistance and his speech was slurred and jumbled. Duran and Graham were told to sit in the police car.

Officer Bills went to Johnson's car, opened the right-hand door and got in the front seat with Johnson. While interrogating him, Officer Bills shone his flashlight around the car, examined the glove compartment, and while shining the light upon the dashboard, found a cigarette rolled in brown paper in a plastic tray (this cigarette by chemical and microscopic analysis was later determined to be marijuana, of a type ''immature in growth''). Bills showed the brown cigarette to Johnson and he denied knowledge of how it got in the tray, denied ownership of it and denied having ever used marijuana. Smith and the other occupants of the car also denied ownership of the cigarette and stated they did not know how it got in the car. The Buick was then impounded for delivery to the narcotic officers and the defendants were transported to jail where they were booked.

Johnson and Smith were examined by a physician at about 4:45 a. m. on May 3, 1955. The doctor observed that Johnson's behavior was ''. . . rather peculiar in that he was drowsy and nodding and his eyes were droopy on the one hand and, on the other hand, a few minutes later he would perk up as if he weren't tired necessarily, a rather unusual state. I noticed his pupils were a little dilated, checked his pulse and respiration and found them normal. I noticed no marks on his arms and then I had him blow his breath in my face, as I do in these cases. I couldn't smell alcohol and I detected what to me was the odor of . . . breath of a marijuana smoker, like old burnt Manila rope, or the old fashioned cubab cigarette odor''; that defendant Smith's behavior was essentially the same as that of Johnson except that Smith's pupils were normal in size, he was ''nodding, drowsy, apathetic, a very slight weave or ataxia, as I call it, drooping of his lids.'' The doctor further testified that he felt both Johnson and Smith had been smoking marijuana cigarettes.

A microscopic examination was made of debris removed from the clothing worn by Johnson and Smith and from the floor of the Buick car. It was determined that this ''material contained marijuana of an 'immature in growth' '' type.

Johnson and Smith testified that on the night of May 2d they drove around San Diego in the Buick with Graham and Duran; that they then went to Tijuana and visited several cafés and bars until about 2:30 a. m. on May 3d; that they then drove back to San Diego and were stopped by the police officers; that they did not smoke marijuana cigarettes in Tijuana or in San Diego and did not know how the marijuana cigarette got in the car.

Appellants' sole contention is that the trial court erred in admitting in evidence the marijuana cigarette and other material which had been obtained as a result of an unlawful and unreasonable search and seizure of defendant Johnson's automobile. In support of this contention they cite the recent case of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]. It is unnecessary to here discuss at length the facts and the law stated in the Cahan case in view of the more recent decisions of *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52] and *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57].

In the Martin case the defendant was convicted of possession of marijuana found in an automobile in which he was riding and the contention on appeal was that the search of the automobile was unlawful and that the evidence produced thereby was therefore inadmissible. In that case two Oakland police officers (McCann and Price) on patrol duty, at about 11 p. m., observed a parked car in a "lover's lane" with two men sitting in the front seat. McCann testified that he "figured we had better check it out" and that when he brought the patrol car around to make a U-turn, "the suspects' car took off" at a high rate of speed; that after pursuing the car for some distance with the red light lit and siren going on the police car, they overtook and stopped the other automobile. The officers ordered the suspects to put their hands in front of them and when they did so, Officer McCann saw a small bag in the middle of the front seat that had been covered by their hands. The officers ordered the suspects out of the car and after searching them for weapons, Officer McCann reached into the car and took the bag. He examined it and concluded that it contained marijuana. Later analysis confirmed this conclusion. The court held that the presence of the two men in the parked automobile on a "lover's lane" at night was itself reasonable cause for police investigation; that the officers could reasonably infer from their sudden flight that the suspects were guilty of some crime and that an investigation by the officers was reasonable; that when

Officer McCann saw the bag that was uncovered when the suspects removed their hands, he had a reasonable cause to believe that their possession of it prompted the flight and that it contained contraband; and that the officer was justified in taking it from the automobile.

In the Blodgett case the defendant was convicted of illegal possession of marijuana. Police officers saw the defendant get into a cab which was double parked in front of a hotel at 3 a. m. Defendant, on entering the cab, sat on the left side of the rear seat. Two police officers (Barker and Tarabochia) had been observing the cab as it stood in front of the hotel and decided to investigate. They approached the cab and ordered the occupants to get out. As Officer Barker opened the left rear door he saw the defendant withdraw his left hand from behind the seat at the juncture of the back seat and cushion. After the defendant got out, the officer removed the rear seat and found three marijuana cigarettes where defendant had withdrawn his hand. A search of the automobile was made without a warrant. Defendant contended on appeal that the search of the cab was unlawful and that the evidence obtained thereby was inadmissible. The court held that in view of the hour and the unusual conduct of the occupants of the car, it was not unreasonable for the officers to order them to get out of the car for questioning and that since Officer Barker saw the defendant's furtive action in getting out, he had reasonable grounds to believe that he was hiding contraband and that the search of the cab was therefore reasonable.

In the instant case it was reasonably apparent to the police officers that the defendants were committing or attempting to commit a public offense in their presence. Defendant Johnson's car was being driven in an erratic manner, apparently above the speed limit, weaving from lane to lane, at times practically striking the center island, and almost striking a car proceeding in the same direction. Under these circumstances the officers were fully justified in stopping the defendant's car. After stopping it, it became apparent to the officers that while defendant Johnson was not drunk enough to fail to pass a sobriety test, there was "something wrong," and that he appeared to be under the influence of "something." It was while Officer Bills was seated in the car in the front seat beside Johnson that he noticed the marijuana ciga-

rette in the tray on the dashboard. The seizure of the cigarette and further search of the car was reasonable and lawful under the circumstances shown by the record considered in the light of *People* v. *Martin* and *People* v. *Blodgett, supra.*

The judgments and order are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 15, 1956, and appellants' petition for a hearing by the Supreme Court was denied March 28, 1956. Carter, J., was of the opinion that the petition should be granted.