[Crim. No. 5554. Second Dist., Div. Two. Apr. 20, 1956.]

THE PEOPLE, Appellant, v. ANTHONY THYMIAKAS, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Fred N. Whichello, Deputy District Attorneys, for Appellant.

Gladys Towles Root for Respondent.

FOX, J.—By information, defendant was charged in one count with the possession of heroin, in violation of section 11500, Health and Safety Code. His motion to set aside the information on the ground that there was no reasonable or probable cause to believe he committed the offense charged was granted. (See Pen. Code, § 995.) The People appeal. We have concluded the decision of the trial court is correct.

At the preliminary hearing, Officer Rock, who was one of the arresting officers, testified that he and his partner were given information "around 11:00 P.M." on February 17, 1955, that "defendant was a heavy user of heroin" and that "he kept a user's supply in the amount of approximately one gram . . . at his bedside in his apartment." Defendant was identified as "Tony" or "Tony the Greek." This information was given the officers by a person "on West 5th Street" in Los Angeles, just off of Hill Street, about three or four miles from where defendant resided. It does not appear that the officers had had previous dealings with the person who furnished the information, or that they were acquainted with him, knew his name or address, or anything about him. One of the officers who had been attached to the Narcotics Division for a little more than two years testified he had heard "Tony" or "Tony the Greek" mentioned as being a user and a peddler of narcotics.

With this background, the officers proceeded immediately to the address where defendant lived. They went to the manager of the hotel and procured a key to defendant's room. Upon turning the key in the lock the door opened several inches and caught on a night-chain. When the chain stopped the door from opening, the officers banged on the door, stating they were police officers and demanding that defendant open the door. He responded "Wait just a minute." Officer Rock testified he heard "footsteps approaching

the door," then they "seemed to be going away from the door," at which time defendant called out again, "Wait just a minute," in response to another demand from the officers that he open up. The officer then stated he would have to open the door or they were going to break it down. The door not being opened, the officers forced their way in. It was only a matter of a few seconds from the time the officers unlocked the door until they actually broke into defendant's room. Neither of the officers had a search warrant or a warrant for defendant's arrest.

When the officers entered defendant's room he was standing in the bathroom area. They recovered a number of capsules from the commode and found another under a small table in the living room. Those capsules contained heroin. They also found equipment used in making injections of such a narcotic. Based on this testimony, so acquired, defendant was held to answer.

The People contend there was reasonable and probable cause for the arrest of defendant and that the resulting search was reasonable under the circumstances.

Defendant's position is that before his arrest and the search the officers had no reasonable cause to believe he had committed, or was committing, a felony (Pen. Code, § 836, subds. 3 and 5); that his arrest was therefore illegal and the resulting search and seizure unlawful, hence his commitment was based entirely on incompetent evidence and was therefore without legal sanction.

In *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535], it was held that "reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." In *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36], the court stated that "Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citations]"; that "evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable." It was pointed out that "In some cases the identity of, or past experience with, the informer may provide such evidence [citation], and in others it may be supplied by similar information from other sources or by personal observations of the police." (Pp. 294, 295.)

The question here presented is whether the information given by the unidentified man to the officers, coupled with the recollection of one of the officers that defendant had been mentioned as a user and peddler of narcotics, was sufficient to constitute reasonable cause to believe that defendant was guilty of a felony.

It does not appear that the police officers had had previous experience with this unidentified person, that they knew his name, address, business, reputation or any other fact which would assist in evaluating his reliability. So far as appears, this person was simply an anonymous informer. In the absence of an emergency, and there was none here, "an arrest may not be based solely on such information." (*Willson* v. *Superior Court, supra,* p. 294.) The source, character and circumstances under which the officer had heard the defendant mentioned as a user and peddler of narcotics are not revealed. It is therefore impossible to evaluate this report. (*Willson* v. *Superior Court, supra,* p. 295.) Thus the People failed to present evidence to the court "that would justify the conclusion that reliance on the information was reasonable." (*Willson* v. *Superior Court, supra,* p. 294; *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; and *People* v. *Kitchens,* 46 Cal.2d 260, 263-264 [294 P.2d 17].) It therefore follows that defendant's constitutional rights were violated when the officers broke into his room and that the contraband they obtained as a result of their unlawful search and seizure was inadmissible in evidence. (*People* v. *Cahan,* 44 Cal.App.2d 434 [282 P.2d 905]; *People* v. *Sanders, supra; People* v. *Kitchens, supra.*)

It is now settled that a search cannot be justified by what it produces. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].)

This case is readily distinguishable from the recent decision of this court in *People* v. *Sayles, ante,* p. 657 [295 P.2d 579]. In the latter case one of the arresting officers had knowledge of defendant's narcotic addiction as a result of an interview with him in the course of an earlier investigation. Prior to defendant's arrest an operator working with the police advised the officers that defendant was not only selling narcotics but then had some in his possession. Officer Hill gave the operator $5.00 and told him to make a purchase. About an hour later the operator reported to Hill that he had bought a capsule from defendant at his home and that

defendant had an additional supply on his person. Officer Hill identified the substance in the capsule as heroin or a derivative thereof. The officers thereupon forcibly entered defendant's home without a search warrant. Defendant was arrested and considerable contraband discovered. The trial court found that the information the officers had received gave them reasonable ground to believe that defendant was then committing the crime of possessing narcotics; that the arrest and search were proper and the evidence thus obtained was admissible. We sustained the trial court's view.

The order is affirmed.

Moore, P. J., and Ashburn, J., concurred.