[Crim. No. 5398.   Second Dist., Div. One.   June 26, 1956.]

THE PEOPLE, Respondent, v. BILLIE LEE TUCKER et al., Defendants; JOSEPH JOHNSON GRIESSETT, Appellant.

Albert S. Friedlander, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County containing two counts, defendants were accused in both counts of the crime of robbery. As to the disposition of the charges against defendant Tucker the record is silent, but counsel for defendant Griessett in his brief advises that, ''It appeared from an independent examination of the record by counsel that the charges set forth against the said BILLIE LEE TUCKER in said information had been dismissed in the interests of justice after said BILLIE LEE TUCKER had pleaded guilty to one count of robbery as set forth in another and independent information with which appellant had no connection.''

As to defendant Griessett, the information also charged three prior felony convictions which were admitted.

The last-named defendant entered a plea of not guilty to both counts of the information. Trial by jury resulted in verdicts finding defendant not guilty as to Count I and guilty as charged in Count II. The robbery was found to be robbery of the second degree. From the judgment of conviction defendant Griessett prosecutes this appeal.

Concerning the factual background surrounding this prosecution under Count II, the record reflects that James W. Larkin testified he was engaged in the business of selling used automobiles. That about 7 p. m. on the evening of December 30, 1953, he was at his place of business when two

men came into his office and inquired about the purchase of an automobile. The witness identified defendant Griessett as one of the men. That this defendant then ordered the witness to keep his hands on the table, that "this is a stick-up." That defendant had "something in his coat pocket and he pointed it at me." That defendant Griessett reached into the pocket of the witness and abstracted the latter's wallet. That the entire transaction consumed some two or three minutes. That the wallet contained about $80 and some checks, the latter of which were never cashed.

Defendant Griessett did not take the witness stand in his own behalf but offered the testimony of three witnesses that at the time of the alleged robbery he was visiting with his family and friends at the home of one Evelyn Brown, his foster sister.

As his first ground of appeal appellant urges that the trial court erred prejudicially in its rulings and statements on material matters made during the redirect examination of Arlene Chapman, one of the alibi witnesses.

In that regard it appears from the record that in support of his defense of alibi, appellant called one Arlene Chapman who testified that on December 30, 1953, she was living with her husband at the home of Evelyn Brown, appellant's foster sister. That on the day in question she saw appellant at that place from about 3 p. m. and that he remained there continuously in her presence until approximately 11:15 p. m. That others present were appellant's wife, and the mother and husband of the witness, all of whom corroborated the testimony of the witness as to the presence of appellant on the night in question. On cross-examination by the district attorney, Mrs. Chapman testified that her recollection was that December 30, 1953, was a Thursday. Upon request of the district attorney the court took judicial notice that the calendar showed December 30, 1953, to be a Wednesday.

On redirect examination of the witness, appellant's counsel, in an obvious effort to rehabilitate her testimony that she believed December 30, 1953, was a Thursday when the undisputed fact was that the date was a Wednesday, the following occurred:

"Q. (BY MR. NEUSOM, appellant's counsel): Now, Mrs. Chapman, of your own knowledge, was Mr. Griessett taken to a police station in the City of Los Angeles, and detained there?

"MR. CRAIL (Deputy District Attorney): Objected to on the ground that proper foundation has not been established. If she was personally present, the—

"MR. NEUSOM: I asked, 'of your own knowledge.' What counsel is objecting to is his right to cross examine the witness, but if she knows of her own knowledge whether he was detained at a station, that, I think, would be material.

"MR. CRAIL: Witnesses don't always understand what is meant by their own knowledge.

"THE COURT: I appreciate that is true. The objection will be sustained. She can testify as to what she saw happen to the man on the next day.

"MR. CRAIL: That's right."

then. . .

"Q. (BY MR. NEUSOM): All right. Now, how many days after the day that you testified that Mr. Griessett was at your house from 3:00 P. M. to 11:15 P. M., was it that you went to pick up his clothes? A. (By the witness): It was on the second day.

"THE COURT: Two days after that. All right. Proceed.

"Q. (BY MR. NEUSOM): Now, Mrs. Chapman, on the day following the day that you were there from 3:00 P. M. to 11:15 P. M., I mean, that he was there, did you see Mr. Griessett at all? A. (By the witness): No, I didn't."

then . . .

"Q. (BY MR. NEUSOM): Mrs. Chapman, on the day prior to the day that Mr. Griessett visited your home, can you recall whether or not you worked that day?

"MR. CRAIL: Objected to, your Honor, on the ground that there is no foundation established that she had personal knowledge.

"THE COURT: Sustained.

"Q. (BY MR. NEUSOM): On the day prior to December 30, 1953, do you recall whether you worked? A. (By the witness): Yes, I did.

"MR. CRAIL: Whether she worked?

"MR. NEUSOM: Yes.

"THE WITNESS: Yes, I did.

"Q. (BY MR. NEUSOM): And on that day, approximately what time did you arrive home? A. (By the witness): At 2:30 A. M. in the morning.

"Q. And what time the next day did you see Mr. Griessett?

"MR. CRAIL: Objected to as having been asked and answered, your Honor.

"THE COURT: Sustained.

"Q. (BY MR. NEUSOM): Are you positive, Mrs. Chapman, that you saw the defendant Joseph Griessett on December 30, 1953?

"MR. CRAIL: Objected to as assuming facts not in evidence, and it's been asked and answered.

"THE COURT: Already objected to, and objection sustained on the same question. Sustained."

Appellant also called as his own witness, Frank Estrada, a police officer of the city of Los Angeles attached to the robbery division, and who had previously testified for the prosecution. In part, and so far as material here, the following transpired:

"Q. (BY MR. NEUSOM): Mr. Estrada, of your own knowledge, do you know whether Mr. Griessett (appellant) was in custody on December 31, 1953?

"MR. CRAIL: Objected to as being immaterial.

"THE COURT: Sustained."

It is appellant's contention that by its rulings the trial court unduly restricted him in his attempt to show that the testimony of Mrs. Chapman that December 30, 1953, was a Thursday instead of Wednesday was an error on her part. That he was attempting so to do by relating the day on which the witness saw appellant to some specific events prior to and following the date upon which she had testified that she saw appellant, to wit, December 30, 1953.

█ It is the policy of the law to afford a witness every reasonable opportunity to support the presumption that he is speaking the truth. In consonance with that policy, it is proper upon redirect examination to permit the witness to state facts and circumstances that tend to correct or repel any wrong impressions or inferences that might arise on the matters drawn out in cross-examination (*People* v. *Corey*, 8 Cal.App. 720, 725 [97 P. 907]; 27 Cal.Jur. 109, and cases therein cited). █ That by its rulings the court unduly limited the questions asked on redirect examination seems obvious to us. For instance, the court sustained an objection to a question propounded to the witness as to whether or not she worked on a certain day, and which objection was made on the ground that the witness did not have personal knowledge of such fact. █ Throughout the redirect examination and in connection with questions as to whether the witness, Mrs. Chapman, saw appellant on December 30, 1953, the court consistently ruled that Mrs. Chapman could not testify

thereto on the ground that it was assuming a fact not in evidence. Since Mrs. Chapman herself had testified on direct examination that she did see appellant on the date in question, it is difficult for us to understand the basis for the ruling, viz., that the questions on redirect examination assumed a fact not in evidence. To us it appears that the ruling may well have influenced the jury that since the witness had on cross-examination testified that she saw appellant on a Thursday, and December 30, 1953, was a Wednesday, the witness could not or did not see appellant on December 30, or, in other words, that her testimony on direct examination was not to be given consideration. This, added to the rulings which precluded the efforts of appellant's counsel to clear up an inconsistency in the testimony of the witness constituted error which was prejudicial, since we are unable to say that had proper latitude been afforded appellant in his redirect examination of Mrs. Chapman, the jury might not have acquitted appellant on Count II as well as Count I. This we are disposed to say because the triers of fact encountered difficulty in arriving at the conclusion that appellant was guilty of the offense charged in Count II. This was the second trial of this cause. At the first trial, the jury deliberated one day and were locked up for the night. On the second day of their deliberations, the minutes reflect that, ''It appearing to the Court that the jury is hopelessly deadlocked, the Court declares a mistrial.'' At the second trial, the record shows that the case was given to the jury at 11:35 a. m. on February 3, 1954. At 4:05 p. m. they were locked up for the night. On the following day they resumed their deliberations at 9 a. m.; returned into court at 10:10 a. m. with the request that certain testimony be read to them; retired at 10:30 a. m., and at 11:48 a. m. returned into court with their verdict finding defendant not guilty on Count I and guilty on Count II.

Finally, appellant urges that the court erred in not permitting the witness Officer Frank Estrada to answer the question as to whether appellant was, to the personal knowledge of the witness, in custody of the police on December 31, 1953. Much of what we have herein said as to the rulings of the court on the questions propounded to the witness, Mrs. Chapman, on her redirect examination is applicable to appellant's final contention. We are persuaded that the evidence sought to be elicited was competent and material.

The law makes all competent · evidence admissible,

whether direct or circumstantial, and leaves the jury to determine its relative weight in each case (*Foster* v. *Keating*, 120 Cal.App.2d 435, 451 [261 P.2d 529]; *People* v. *Holden*, 13 Cal.App. 354, 359 [109 P. 495]).

As pointed out by appellant, "It was obvious that the purpose of the defense counsel's question was to corroborate the testimony of Mrs. Arlene Chapman or to rehabilitate the same in that Mrs. Chapman was attempting to testify, but prevented from so doing, that she saw the appellant on the day before he was arrested. Hence, if Mr. Estrada were permitted to, and did testify that the appellant was placed in custody on December 31, 1953, then Mrs. Chapman's testimony that she saw him on December 30th would have had greater credibility and her apparent confusion over whether December 30th was a Wednesday or a Thursday would have probably been dispelled. In other words, the testimony of Mr. Frank Estrada, if admitted, may well have supported the alibi of the appellant, which alibi was certainly an issue in the case."

The judgment from which this appeal was taken is reversed and the cause remanded for a new trial.

Doran, J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 24, 1956.