[Crim. No. 3329. First Dist., Div. Two. Apr. 15, 1957.]

THE PEOPLE, Respondent, v. ERNEST DEWSON, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—This appeal is taken from the judgment of conviction and sentence; the order denying the motion to dismiss under Penal Code, section 995; and the order denying defendant's motion for a new trial.

By information, the defendant was charged with the following:

(1) Possession of a quantity of heroin in violation of Health and Safety Code, section 11500.

(2) Transportation of the same quantity of heroin in violation of Health and Safety Code, section 11500.

(3) Assault by means of a force likely to produce great bodily injury in violation of Penal Code, section 245.

The defendant's motion to dismiss under Penal Code, section 995, was denied. The jury found the defendant guilty of the three offenses charged in the information.

The defendant has urged numerous grounds of appeal which require a rather detailed statement of facts to provide proper background for a discussion of the questions presented.

Approximately one week before June 11, 1956, Clarence Coster, an inspector of the State Bureau of Narcotic Enforcement was told by a paid informant that a Negro known as "Bozo," driving a 1953 Oldsmobile "98" convertible with a black top and light colored body was selling dolophine, a synthetic morphine. Information which Coster received from this informant had led to the arrest of narcotic dealers on three other occasions. No attempt was made by Inspector Coster to further check the credibility or qualifications of the first informant. Substantially similar information was given to Coster by a second informant, except that neither the name of the individual involved nor the particular narcotic was given. Coster had received information from the second informant on other occasions, but no arrests resulted. At about 7:30 p.m. on June 11, 1956, Inspector Coster and Inspector Shoemaker, also of the Bureau of Narcotic Enforcement, were in the vicinity of Lyon Street between Hayes and Grove Streets in San Francisco. They were in a 1956 Ford Sedan owned by the state but not marked as a state or law enforcement vehicle. They were both wearing ordinary clothing. Neither inspector had seen or heard of the defendant before June 11, 1956, or had any information as to the defendant's name or nickname. Coster saw the defendant driving north on Lyon Street in a 1953 Oldsmobile "98" Convertible with a black top and light blue or green body. The inspectors observed the defendant park on the east side of the street, get out of his automobile and walk across the street to a small grocery store on the corner of Lyon and Hayes. About half an hour later, the defendant returned to his automobile. At this time the inspectors observed that there were no license plates on the defendant's automobile. The defendant testified that he had a temporary license sticker on the window. Inspector Coster drove the state automobile and stopped it about 3 feet diagonally in front of the defendant's vehicle. Coster testified that he turned on the red spot light on the left front corner of the state automobile. The defendant testified that there was no red spot

light. Coster got out of the state automobile and started to go around to the front of the defendant's automobile with his badge in his hand, while Shoemaker approached the driver's side of the defendant's automobile. Shoemaker testified that he identified himself as a police officer, displayed his badge, and asked the defendant to open the door. The windows of the defendant's car were closed. Both inspectors were armed but they testified that they did not display their guns. The defendant testified that the inspectors approached his car with guns in their hands and beat on the windows with their guns; that the motor of his car was running so that he could not hear anything, and that he was frightened of an attack or robbery. The defendant backed up his automobile a few feet and then drove forward at a high rate of speed down Lyon Street. As the defendant drove forward, his left front fender threw Coster, who was standing between the defendant's car and the state vehicle, against the state vehicle. Coster received minor scratches on his leg as a result. Both inspectors fired shots at the fleeing automobile. One of the bullets went into the left front driver's window of the defendant's automobile and slightly wounded the defendant. Two other bullets entered the rear window and went out the front windshield. The inspectors then pursued the defendant with a red light and siren. They lost sight of the defendant for several blocks, but then saw him again on Geary Street near Sears and Roebuck, traveling at a very slow rate of speed. The inspectors pulled their automobile in front of the defendant, forcing him to stop. Coster approached the defendant and asked, "What is the big idea?" The defendant replied, "I thought you wanted me for traffic tickets." Coster asked, "How about narcotics?" The defendant replied, "I don't know anything about narcotics." Neither of the inspectors asked the defendant for his name or any identification. Without further questioning the defendant was handcuffed and placed in the state automobile. Inspector Shoemaker drove the defendant's automobile back to the scene of the shooting. Inspector Shoemaker testified that the transmission of the defendant's car was broken. The defendant testified that his car was in excellent condition and that he had slowed down because he heard the police siren, not because he was having motor trouble. When other police units arrived, Coster asked Shoemaker to take the state vehicle and search the route of the chase for any narcotics the defendant might have thrown from the vehicle. Meanwhile, Coster searched the defendant's automobile with

a flashlight. On the front floor board under the ledge of the right seat, in a position not visible to the driver, Coster found a small white packet, and under the floor mat a four inch snap blade knife. (People's Exhibit No. 2.) The defendant was taken to the Park Emergency Hospital for treatment of his wound. Then he was taken back to the police station, booked and questioned. The defendant denied any knowledge of the packet and the knife, or of how these objects came to be in his automobile. He stated that other people frequently rode with him and had done so, earlier on the evening of June 11, 1956. A subsequent chemical analysis of the contents of the packet disclosed that it contained a grain and a half of heroin.

The defendant made appropriate and timely objections to the introduction of the packet and the knife and the testimony of the inspectors at the preliminary hearing and at the trial.

The defendant raises numerous grounds of appeal which will be taken up in order:

(1) That his motion to set aside the information under section 995 of the Penal Code was improperly denied. Under Penal Code, section 1237, this motion is reviewable on appeal from the judgment of conviction. (*People* v. *Costa,* 141 Cal. App.2d 795 [297 P.2d 667] ; *People* v. *Simmons,* 119 Cal. 1 [50 P. 844] ; *People* v. *Egan,* 73 Cal.App.2d 894 [167 P.2d 766].) The record before us discloses that such a motion was properly made, but does not indicate the grounds for the motion. As the transcript of the preliminary examination was not brought up on appeal, error cannot be assumed in its absence. (*People* v. *Scott,* 24 Cal.2d 774 [151 P.2d 517].) Matters outside the record cannot be considered on appeal. (*People* v. *Villarico,* 140 Cal.App.2d 233 [295 P.2d 76] ; *People* v. *Croft,* 134 Cal.App.2d 800 [286 P.2d 479] ; *People* v. *Levine,* 114 Cal.App.2d 616 [250 P.2d 645].)

(2) That he was deprived of due process of law and effective aid of counsel in violation of Amendment XIV of the United States Constitution, and article I, sections 1 and 13 of the State Constitution. As the record discloses the presence of counsel at the preliminary hearing and the trial there is no basis for this contention.

(3) That he was denied the right to ascertain the identity of the informants against him or any information about them. Defendant maintains that his case presents an exception to Code of Civil Procedure, section 1881, subdivision 5, which provides as follows: ''A public officer cannot be examined as to communications made to him in official con-

fidence when the public interest would suffer from the disclosure.''

It has not been determined by our Supreme Court whether a defendant has the right to ascertain the identity of the informers against him. In *People* v. *Gonzales,* 141 Cal.App.2d 604 [297 P.2d 50], where the defendant was charged with the possession of narcotics, the privilege to refuse to disclose the identity of the informer was upheld. The general rule was well stated in *Wilson* v. *United States,* 59 F.2d 390 at page 392: ''If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case, disclosure will be compelled.'' (Wigmore, Evidence, 3d ed., vol. VIII, p. 751, § 2374; *Regina* v. *Richardson* (1863), 176 Eng.Rep. 318.) In the federal courts it has been held (in cases where the officers are in possession of other information) that the name of the informer need not be revealed unless it is essential to the defense, as for example, where the legality of the arrest turns on the officer's good faith. (*Scher* v. *United States,* 305 U.S. 251 at pp. 253-254 [59 S.Ct. 174, 83 L.Ed. 151] ; *United States* v. *One 1941 Oldsmobile Sedan,* 158 F.2d 818, 820.) In some states it has been held (in cases where only informer information was relied upon) that the identity of the informer must be disclosed to test the officers' justification in making the arrest. (*Hill* v. *State,* 151 Miss. 518 [118 So. 539, 540] ; *Smith* v. *State,* 169 Tenn. 633 [90 S.W.2d 523, 524].) The federal courts also recognize a distinction between the cases where the informer is that and nothing more, in which case the defendant is not entitled to have his identity disclosed and cases where the informer is a participant in the offense. (*Sorrentino* v. *United States,* (9th Cir.) 163 F.2d 627.) This view was followed by this court in *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821]. (Crim. No. 3285, opinion filed March 26, 1957.) The informants in this case did not appear as witnesses against the defendant. There would therefore seem to be no violation of Penal Code, section 686, which guarantees the right of confrontation in California. (*People* v. *Beatty,* 132 Cal.App. 376 [22 P.2d 757].) The instant case seems to fall within the rule of *People* v. *Gonzales.* Furthermore, the defendant has not shown how the identity of the informers is essential to his defense. The trial court also did not find this information essential to the disposition of the case.

■■ (4) That he was denied trial by jury because the issue of the reasonableness of the search and seizure was

determined by the court as a matter of law out of the hearing of the jury. It is well settled that the admissibility of evidence is a matter for the court. Defendant concedes this point, but maintains that the jury must not necessarily be excluded and that the hearing of such evidence would not be prejudicial to the prosecution. The procedure to determine the admissibility of evidence when the question of reasonableness or legality of an arrest for search or seizure is an issue, was prescribed by *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469]. The defendant does not present any valid reasons for departing from this procedure.

(5) That the evidence against him was obtained by an unlawful search and seizure. ██ As the defendant was arrested and his car searched without a warrant, he has established a prima facie case, and the burden rests on the State to show proper justification. (*Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23].) Under Penal Code, section 836 an officer may make an arrest without a warrant when a felony has, in fact, been committed, and he has reasonable cause for believing the person arrested to have committed it. ██ Reasonable cause has been defined as: ". . . such a state of facts . . . as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty." (*People* v. *Kilvington*, 104 Cal. 86 at p. 92 [37 P. 799, 43 Am.St.Rep. 73].) The first question is whether the inspectors had reasonable cause to arrest the defendant. The trial court, in relying on *People* v. *Thymiakas*, 140 Cal.App.2d 940 [296 P.2d 4], held that there was reasonable cause. In *People* v. *Thymiakas*, the arrest of the defendant was based solely on the report of an informant with whom the police had had no prior dealings and the recollection of one of the police officers that the defendant had been a narcotics addict. The appellate court affirmed the granting of the defendant's motion for setting aside the information for want of reasonable cause under Penal Code, section 995. The court relied on *Willson* v. *Superior Court*, 46 Cal.2d 291, in which it was said at page 294 [294 P.2d 36]: "Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency (citation), an arrest may not be based solely on such information (citations), and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable."

In the Willson case, however, there was not only the information provided by an informant not previously used, but also the suspicious conduct of the defendant in the presence of an officer. The present case presents the question of whether the officer's reliance on the information provided by the anonymous reliable informant was reasonable cause for arrest. In *People* v. *Gonzales,* 141 Cal.App.2d 604 [297 P.2d 50], it was held that if an officer received information from a reliable source and acted in good faith, there was reasonable ground for justifying the arrest. The court relied on the statement in *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535] (which however, did not involve an informant) at page 656, that ". . . reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt," and distinguished *People* v. *Thymiakas* on the basis of the reliability of the informant. ▇▇ A reliable informant apparently means a person whose information has in the past led the police to valid suspects. (*People* v. *Penson,* 148 Cal. App.2d 537 [307 P.2d 24].) The Gonzales case was followed in *People* v. *Montes,* 146 Cal.App.2d 530 [303 P.2d 1064]; *People* v. *Vice,* 147 Cal.App.2d 269 [305 P.2d 270], and *People* v. *Penson,* 148 Cal.App.2d 537 [307 P.2d 24]. In *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222], the court reached the same result but relied on the Boyles and Willson cases. In all of the above cases, the information provided by the informant was much more specific than in the instant case. In the Gonzales case the defendant was identified by name and address. The police went to the address indicated, knocked on the defendant's door and asked to see him. When Gonzales appeared and identified himself he was searched and arrested. In the Trowbridge case, besides providing an accurate description of the defendant and her address, the informant stated he had seen marijuana in her apartment. In the Montes case the informant provided the name and address of the defendant and the police also watched the defendant giving packages to people who were found to possess narcotics. In the Vice case the defendant had been known to a narcotic inspector for a period of two years as an associate of narcotic dealers and the informant also stated that the defendant was in possession of narcotics in a certain hotel room. In the Penson case the police were advised that the bookmaking activities were taking place at a specific address. In the instant case the officers knew only

that a Negro known as "Bozo" who drove a certain type of automobile was dealing in narcotics. No specific information relating to Bozo's description or his address was given, nor was it indicated that his activities were confined to any particular location in the city of San Francisco. The trial court took judicial notice of the fact that an automobile like the defendant's was a common sight in San Francisco. If the officers in the instant case had sufficient probable cause solely on the basis of the data provided by the information, they would also have sufficient cause to arrest any Negro anywhere in San Francisco driving a car similar to the one described.

However, it is not necessary to determine this issue here, as the defendant's conduct in driving away from the inspectors is sufficient conduct to create probable cause for a lawful arrest. It is well settled that an officer may question a person at night. (*People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 631].) On the issue of whether the defendant here was escaping from the officers or fleeing in fright from robbers, the evidence is completely contradictory. Although it has been held that an appellate court is not bound by the trial judge's determination as to the existence of probable cause, (*Murphy* v. *Murray*, 74 Cal.App. 726, 731 [241 P. 938], *Michel* v. *Smith*, 188 Cal. 199 [205 P. 113]) the better view is that the determination of the trial court should be accepted by the reviewing court. (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].) Here, in finding the probable cause, the trial court apparently chose to believe the inspectors that they had their red light on and identified themselves to the defendant as police officers and that he fled from them. As said by our Supreme Court in *People* v. *Lyons*, 47 Cal.2d 311 at p. 320 [303 P.2d 329] : "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." The defendant relies on *People* v. *Harvey*, 142 Cal.App.2d 728 [299 P.2d 310] and *People* v. *Gale*, 46 Cal.2d 253 [294 P.2d 13]. In the former, however, the defendant was arrested before he made any suspicious movement, while in the latter, the only suspicious conduct on the part of the defendant was that he was driving a car with a smashed front; he explained to the questioning officer that the vehicle had been in an accident the

week before; the court held that as his answer was consistent with innocence there was no basis for the arrest and search. In the instant case, the defendant's conduct in fleeing from the officers was not consistent with innocence. In *People* v. *Martin*, 46 Cal.2d 106 [293 P.2d 52], in upholding the legality of an arrest and subsequent search without a warrant the court said at page 108: "Although the presence of two men in a parked automobile on a lover's lane at night was itself reasonable cause for police investigation (citations), their sudden flight from the officers and the inference that could reasonably be drawn therefrom that they were guilty of some crime (citation), left no doubt not only as to the reasonableness but as to the necessity for an investigation."

*People* v. *Blodgett*, 46 Cal.2d 114 [293 P.2d 57], where the defendant made a furtive gesture after being ordered to get out of the taxicab by police officers at 3 a. m. and the court held that in view of the hour and the defendant's unusual conduct, there was reasonable cause. In *People* v. *Garnett*, 148 Cal.App.2d 280 [306 P.2d 571], a police officer was told by a reliable informant that there was a certain quantity of narcotics in the defendant's hotel room. The court held that the defendant's act in running after he saw the officer was sufficient reason in itself for believing some crime had been committed and for authorizing a search. In the instant case an inference of guilt could reasonably be drawn from the defendant's unusual conduct after the approach of Coster and Shoemaker.

(6) That the packet containing narcotics found in his car was the product of an unlawful search and seizure and therefore inadmissible evidence under the rule of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905]. The legality of an arrest is not necessarily determinative of the lawfulness of the search incident thereto. The issue is the reasonableness of the search under the particular circumstances. (*Carroll* v. *United States*, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790] ; *People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528].) The next question here presented is whether although the arrest of the defendant was a lawful one based on probable cause, the search of the defendant's automobile was a reasonable search incident to a lawful arrest. It is well settled that a search incident to a lawful arrest extends to the person as well as the premises under his control. (*In re Dixon*, 41 Cal.2d 756 [264 P.2d 513] ; *People* v. *Coleman*, 134 Cal.App.2d 594 [286 P.2d 582].) Defendant relies on *People*

v. *Yet Ning Yee,* 145 Cal.App.2d 513 [302 P.2d 616], which held that a warrant to search the premises is not sufficient for a search of the defendant's person, and *United States* v. *Di Re,* 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210], in which it was held that the search of the automobile did not justify a search of the person of the defendant. In *People* v. *Molarius,* 146 Cal.App.2d 129 [303 P.2d 350], and *People* v. *Wilson,* 145 Cal.App.2d 1 [301 P.2d 974], also cited by the defendant, the arrests were for vagrancy; the search of the automobile revealed bookmaking paraphernalia and the court reversed the bookmaking convictions as based on an illegal arrest and search. In the instant case, however, the defendant was arrested on a suspicion of dealing in narcotics and narcotics were found in his vehicle. A number of recent cases upheld the search of automobile as an incident to a lawful arrest without warrant. (*People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52] ; *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57] ; *People* v. *Lujan,* 141 Cal.App.2d 143 [296 P.2d 93] ; *People* v. *Jiminez,* 143 Cal.App.2d 671 [300 P.2d 68] ; *People* v. *Johnson,* 139 Cal.App.2d 663 [294 P.2d 189] ; *People* v. *Penson,* 148 Cal. App.2d 537 [307 P.2d 24] ; *People* v. *Garnett,* 148 Cal.App. 2d 280 [306 P.2d 571].) In *McDonald* v. *United States,* 335 U.S. 451, 455 [69 S.Ct. 191, 93 L.Ed. 153], also relied upon by the defendant, the crucial factor was the absence of search warrant where the defendant had been under observation for two weeks. *People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505], involved dictograph installations by police officers and *People* v. *Berger,* 44 Cal.2d 459 [282 P.2d 509], also cited by the defendant, involved photostats of evidence obtained under an invalid search warrant, and seemed to have no relevance in this connection to the instant case. The same is true in *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23], where the officers broke into the house without a search warrant and also had no reasonable cause to arrest the defendant. Nor is this a situation where there can be no consent to the search because the defendant is in custody.

▮▮▮ (7) That the evidence was insufficient to support the judgments. As to count one for the possession of heroin, the defendant maintains that he did not know that the narcotic was in his automobile and that therefore he did not have knowledge of the fact which brought his act within the provisions of the pertinent statute under the rule of *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433], and *People* v. *Cole,* 113 Cal.2d 253 [248 P.2d 141]. The defendant correctly cites

*People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177], for the proposition that the burden was on the state to prove facts from which defendant's knowledge thereof could be fairly inferred. However, in *People* v. *Brown,* 102 Cal.App.2d 60 at page 62 [226 P.2d 609], the court said: ''The record shows that defendant owned the automobile in which morphine was found; that the morphine was concealed near a rubber mat in the automobile in front of the seat which she had just been occupying. Whether she was aware of the presence of the drug was a question of fact for the determination of the trial court.'' Furthermore, in the Antista case, the court quoted from *People* v. *One 1940 Chrysler,* 77 Cal.App.2d 306, at page 314 [175 P.2d 585]: ''We think the true rule is that when narcotics are found concealed in or about an automobile, at least where such automobile is in the possession of the owner [or his entrustee] the trial court may infer knowledge on the part of the owner. Such facts are sufficient to cast the burden of going forward with an explanation on the owner.'' It cannot be said here that on the face of the evidence sufficient facts could not have been found to substantiate the finding of the trial court. (*People* v. *Lawson,* 114 Cal.App.2d 217 [249 P.2d 850].)

As to count two for the transportation of heroin, defendant's flight from the officers in the instant case is sufficient evidence to support the charge of transportation. (*People* v. *Watkins,* 96 Cal.App.2d 74 [214 P.2d 414].)

As to count three for the assault by means of force likely to produce great bodily harm, the defendant maintains that as he was only driving away from the officers in fright, he cannot be found guilty of this offense. However, the gist of the offense charged in this count is the likelihood of bodily injury as the result of force used and the degree of force used is not as significant as the manner of use. (*People* v. *McIlvain,* 55 Cal.App.2d 322 [130 P.2d 131].) Nor is it required that the injuries be serious. (*People* v. *Bumbaugh,* 48 Cal.App.2d 791 [120 P.2d 703].) What kind of force is likely to produce great bodily injury is a question of fact for the trial court. (*People* v. *Carnavacci,* 119 Cal. App.2d 14 [258 P.2d 1121]; *People* v. *Nudo,* 38 Cal.App. 2d 381 [101 P.2d 162].) In the instant case the jury resolved this issue against the defendant. The case of *People* v. *Fox,* 82 Cal.App.2d 913 [187 P.2d 924], in which it was held that one who accelerates his automobile at a high speed and then applies his brakes to skid the car in order to dislodge a pas-

senger in the automobile, is guilty of an assault by means of force likely to produce great bodily injury, supports the state's contention rather than the defendant's. The defendant attempted to distinguish the Fox case on the grounds that there the defendant knew his victim was an officer. In this case, the issue of whether or not the officer identified himself was also resolved against the defendant by the jury.

(8) That the trial court erred in its refusal to admit into evidence the following typewritten anonymous letter received by the defendant's attorney: ''You know me cause I had a case with you *wonce*. I wanted to tell you that the stuff in Ernies car was probably mine. I was with him the week before he got busted, but I did not know for s*h*ure where I lost the 1*o* dollar paper I had. If I come up with this do I have to take the beef. I won*t* take the beef but I don*t* want Ernie to either. Te*l* Ernie and the word will hit the street.'' Under Code of Civil Procedure, section 1954, the admission of such matter is regulated by the discretion of the trial court.

It is a well recognized rule that the hearsay rule applies generally to writings which do not fall within its exceptions. (19 Cal.Jur.2d 113.) In the cases cited by the defendant the evidence admitted was of a much more reliable nature than the letter here.

In *People* v. *Erno,* 195 Cal. 272 [232 P. 710], the court said that it was always proper to show that some other person committed the crime at page 279: ''But we do not understand the rule to extend further than to mean that such showing should be made in the proper manner, and in accord with the ordinary rules of evidence.'' Furthermore, in the above case, as well as in *People* v. *Mitchell,* 100 Cal. 328 [34 P. 698]; *People* v. *Myers,* 70 Cal. 582 [12 P. 719]; *People* v. *Wong Loung,* 159 Cal. 520, 522 [114 P. 829], there were several defendants involved and the court was faced with the issue of which of the defendants had committed the crime in question. In *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], cert. den. 329 U.S. 790 [67 S.Ct. 356, 91 L.Ed. 677], and 331 U.S. 783 [67 S.Ct. 1185, 91 L.Ed. 1815], rehearing denied, 329 U.S. 832 [67 S.Ct. 497, 91 L.Ed. 705], the court held inadmissible a verified petition of the decedent [executed in connection with the commitment of her husband to an institution for the insane], which recited that her husband had threatened to kill the decedent and himself and had struck the decedent, offered by the defendant to show that the decedent

was killed by her husband. It does not appear that the trial court has abused its discretion here.

The defendant further contends that the refusal of the trial court to admit the letter constitutes a denial of due process, citing *Hovey* v. *Elliott,* 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215]; *Windsor* v. *McVeigh,* 93 U.S. 274, 277 [23 L.Ed. 914]; *McClatchey* v. *Superior Court,* 119 Cal. 413 [51 P. 696, 39 L.R.A. 691], and *In re Cunha,* 123 Cal.App. 625 [11 P.2d 902, 18 P.2d 979], and *People* v. *Tucker,* 142 Cal. App.2d 549 [298 P.2d 558]. In *Hovey* v. *Elliott, supra,* the judgment was reversed because the defendant's answer which disproved the fact that he was a rebel in confederate territory, was stricken. In *Windsor* v. *McVeigh, supra,* the judgment was reversed because the defendant's answer was stricken because he was in contempt for failure to deposit property in court. In *McClatchey* v. *Superior Court, supra,* the trial court excluded all evidence except the notes of the court reporter. *In re Cunha,* 123 Cal.App. 625 [11 P.2d 902, 18 P.2d 979], this court held that the petitioner was denied a fair trial on a contempt charge because he was denied the opportunity of proving the truth of the allegations of an affidavit seeking disqualification of a trial judge. In *People* v. *Tucker,* 142 Cal. App.2d 549 [298 P.2d 558], it was held error to refuse to permit the defendant witness an answer which might support the defendant's alibi. The evidence erroneously rejected by the trial court in all of the above cases was of such a kind that its reliability could be examined by the trial court. It is not in any way analogous to the unsigned anonymous typewritten letter received by the defendant's attorney. It does not appear here that the defendant presented any evidence as to the writer of the letter.

(9) That the incorrect rulings of the trial court set forth below amounted to an unfair trial. (a) Inspector Coster was asked on voir dire, ''From what source have you heard about the automobile (the defendant's Oldsmobile)?'' and replied, ''A confidential informant.'' This was not a statement of opinion as maintained by the defendant but one of fact. As the statement was made outside of the presence of the jury it was not prejudicial to the defendant's cause.

(b) It was not error for the trial court to allow the District Attorney to reopen her questioning of Inspector Coster on voir dire, as this matter was properly within the discretion of the trial court. (c) The court erred in admitting as accusatory statements Inspector Coster's testi-

mony and that the defendant said, "I don't know anything about narcotics." In testifying on his own behalf, the defendant admitted making this statement. In *People* v. *Teshara,* 134 Cal. 542 [66 P. 798]; *People* v. *Wong Loung,* 159 Cal. 520 [114 P. 829]; *People* v. *Vogel,* 36 Cal.App. 216 [171 P. 978], the type of accusatory statement excluded was that of a murder victim in attempting to identify his assassin.

As pointed out by the court in *People* v. *Teshara,* it is the conduct of the accused and not the accusation itself which is the evidence, and the only reason for admitting the accusation is to explain the conduct. The case of *People* v. *McCoy* [127 Cal.App. 195 (15 P.2d 543)], cited by the defendant indicates that if the conduct of the accused is not that of an innocent man, the admission of the accusatory statement is not prejudicial. *People* v. *Amaya,* 134 Cal. 531, 538 [66 P. 794], rejected the view that the mere fact of arrest is sufficient ground in all cases to exclude statements affecting the accused. (d) The defendant maintains that the introduction of the switch blade knife found by the officers in the defendant's car and testimony relating thereto is inadmissible as evidence of another crime, that is violation of sections 1291 and 1292 of the San Francisco Police Code (Ordinances 9938 and 9939). As the state correctly points out, section 1292 of the San Francisco Police Code which provides that the possession of a switchblade knife is a misdemeanor, did not become effective until thirty days after October 17, 1956, the date the ordinance was signed by the mayor. The defendant was arrested on June 11, 1956. Section 1291 of the San Francisco Police Code which was in effect on the date of the defendant's arrest referred only to loitering while carrying a concealed weapon. There is therefore no merit in this contention.

In *People* v. *Jennings,* 142 Cal.App.2d 160 [298 P.2d 56], cited by the defendant, the hack saw was excluded because the court found that under the circumstances in that case the officers had plenty of time to obtain a search warrant. Although the admission of the knife here as a part of the res gestae was error, it cannot be said to have resulted in a "miscarriage of justice" within the meaning of article VI, section 4½ of the State Constitution. In *People* v. *Borbon,* 146 Cal.App.2d 315 [303 P.2d 560], cited by the defendant, the evidence the court rejected was photostats made from the documents obtained as the result of an unlawful search and seizure.

(10) That the district attorney was guilty of misconduct in

offering the knife in evidence and making certain comments to the jury. There is no merit in this contention.

(11) That the trial court abused its discretion in denying the defendant's motion for a new trial. The trial court stated that it could conceive of no grounds upon which to grant a new trial. The motion was addressed to the sound discretion of the trial court, and there appears no abuse of such discretion here.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

DOOLING, J.—I concur in the judgment. However, I want to make perfectly clear my views on the subject of disclosure of the identity of the confidential informant. I agree with the very recent opinion of the United States Supreme Court in *Roviaro* v. *United States* (filed March 25, 1957) 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639]. Justice Burton, speaking for that court, laid down the general principle in one clear and unequivocal sentence: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Following this rule we recently held in *People* v. *Lawrence*, 149 Cal.App.2d 435 [308 P.2d 821], that the identity of an informant claimed to have been a participant in the crime must be disclosed on the voir dire if his activity or communications are relied on by the officer as furnishing probable cause for the arrest and search of the defendant and must in any event be disclosed on the trial.

So in this case if the information furnished by the confidential informers to the officers had been necessary to establish probable cause for the arrest and search of the defendant it would have been reversible error not to compel the disclosure of their identity. In *Roviaro* v. *United States, supra,* the court said on this precise subject: "Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential information."

It is because I agree that the conduct of the defendant in fleeing when the officers sought to question him furnished sufficient evidence of probable cause apart from the confidential communications of the undisclosed informers that I concur in the judgment.

DRAPER, J.—I join in the concurring opinion of Mr. Justice Dooling.

Appellant's petition for a hearing by the Supreme Court was denied June 12, 1957. Carter, J., was of the opinion that the petition should be granted.